LIVINGSTONE *v.* SAGINAW PLATE GLASS CO.

1. MASTER AND SERVANT—SAFE PLACE TO WORK—DUTY OF MASTER.

   The doctrine that it is the duty of the master to furnish the servant with a safe place to work, has no application to a case in which a servant is injured by the frozen crust ·of a sand pile breaking off after being undermined by the servant and his fellows in conveying the sand in wheelbarrows into the master's factory.

2. SAME—ASSUMPTION OF RISK.

   The danger of injury by the breaking off of the frozen crust of a sand pile, on being undermined in the process of conveying the sand away in wheelbarrows, is so obvious that it is assumed by a workman of ordinary intelligence performing such labor.

3. SAME—FAILURE TO SUPPLY LIGHTS—FELLOW-SERVANTS.

   Where a master has employed an electrician, and furnished abundant supplies of wire and lamps to place lights where needed, and torches for the use of his servants, the servants intrusted with the duty of placing or supplying lights are fellow-servants of the ordinary laborers about the master's factory, for whose negligence in failing to place lights the master is not liable to a laborer injured by reason of such neglect.

Error to Saginaw; Beach, J. Submitted January 9, 1906. (Docket No. 39.) Decided November 7, 1906.

Case by Miles A. Livingstone against the Saginaw Plate Glass Company for personal injuries. There was judgment for plaintiff, and defendant brings error. Reversed, and no new trial ordered.

*Humphrey, Grant & Smith,* for appellant.

*Eugene Wilber* and *Fred L. Eaton,* for appellee.

McALVAY, J. Plaintiff brought this action against defendant for personal injuries claimed to have been sustained while working for defendant on January 14, 1904. Defendant is a corporation engaged in the business of manufacturing plate glass at Saginaw. Plaintiff, at the time the injury occurred, was engaged in wheeling sand into the grinding department of defendant's factory. He had been employed by the night foreman. There was a day foreman and a night foreman for this department. Each had authority to hire and discharge men, and they both worked with their men. This factory consisted of five departments, with a foreman in each department. There was a superintendent of the factory and a general manager over all of them. About 250 men were employed. Plaintiff, on January 14th, a little before 6 o'clock in the afternoon, applied at the grinding shed to the night foreman for a job at night work. He had previously worked for defendant in another department at night work from October, 1902, to August, 1903. He was told to wait a few minutes until it could be ascertained whether there was a vacancy, and, if so, he could have work. The foreman returned soon and told him to come with him. He gave him a wheelbarrow, took him outside of the factory, showed him a sand pile that was out there, and told him to go to work wheeling sand from that pile into the grinding room. At the time the plaintiff went to work it was dark. The sand pile where plaintiff was to perform his work was about 65 feet from the factory door. It had been hauled in on cars and shoveled off, making a long pile, which was about 10 to 14 feet high at the center and spread out at the sides to a width of about 30 feet on the ground. At the time of the accident it was 150 to 250 feet long east and west along the factory. The weather had been very cold, and the sand was frozen on the outside, making a crust of from $1\frac{1}{2}$ to 2 feet in thickness. This sand had been hauled during the autumn before and was enough for the winter season. The men had been at work taking sand

from this pile for several weeks. They worked from the end nearest the factory door and were expected to take the sand clean as they worked. The end at which the work was carried on was not frozen. The sand was shoveled upon wheelbarrows and then wheeled by the workmen along planks laid down for a track into the grinding department. As the work progressed the sand would run down, as it was taken away from the bottom at the end, and leave the frozen crust overhanging at the top. It was necessary for the workmen to break this crust off with a pick. If left to overhang too much, it would break off of its own weight in large pieces and slide down the front. Two men worked at this sand pile during the day and two during the night. The night shift went to work at 6 o'clock p. m. At this date there was snow on the ground. As to whether there was light enough at the time plaintiff went to work, and while he continued at this work, to enable him to see sufficiently to observe his surroundings, is a matter in dispute. There was another smaller pile of lake sand, from which the men, as directed by the grinders, would occasionally bring a barrow of sand as it was required. Plaintiff had worked about $2\frac{1}{2}$ hours wheeling sand, when, while at this large pile getting a load, a large piece of the frozen sand broke off from the top and, sliding down the front of the pile, struck him and broke his leg. For this injury suit was brought.

The negligence of defendant claimed in the declaration was:

1. The failure to furnish sufficient lights.
2. The failure to furnish a safe place in which plaintiff was to work.
3. The failure to inform plaintiff, when put to work, of the condition of the sand pile and the danger to which he was exposed.

Plaintiff obtained a judgment, and defendant brings the case to this court for review. The case was tried and submitted by the court to the jury practically upon the theory of the plaintiff as set forth in his declaration. Defendant

insisted in the trial court, and insists here, that the injury which plaintiff received was the result of one of the ordinary risks of his employment, which he assumed by entering upon the work, and that the well-known rule requiring the master to provide a safe place for the servant to work has no application to this case.

Defendant requested the court to charge the jury as follows:

" The work in wnich the plaintiff was engaged at the time of the accident was the simplest kind of manual labor, and was not attended by any danger which was not within the comprehension of any person of ordinary intelligence. The condition of the weather was, and had been for some time, such that the plaintiff knew, or ought to have known, that the outer surface of the sand pile was frozen. He also knew that, if he dug sand out from the bottom of the pile, the sand above, whether loose or frozen, would break off and fall down. The plaintiff being chargeable with the knowledge of all these facts when he entered upon the work, he assumed all risks of injury to himself growing out of these conditions. He required no instruction from any one to enable him to guard against them. He knew, as well as the defendant or any of its officers or agents, just what dangers attended this work, and he knew, as well as they did, whether the lights which were furnished were sufficient to enable him to see the situation and protect himself against such danger. The risk growing out of insufficient lights can be assumed by an employé just like any other risk, and I charge you that under the undisputed evidence in this case all of the risks connected with plaintiff's employment which resulted in the injury to him, including the alleged insufficiency of lights, were assumed by him, and hence he cannot recover in this action, and you will render a verdict for the defendant of no cause of action.

" I charge you that the men on the day shift, who were working on the sand pile during the daytime of the day when plaintiff was injured, were the fellow-servants of the plaintiff, and if they left the sand pile in a dangerous condition as the result of the negligent manner in which they did their work, and plaintiff's injury resulted therefrom, that was the negligence of a fellow-servant of the plaintiff, for which the defendant is not responsible.

"I charge you that the foreman, Charles Lewellen, in respect to all the matters complained of as negligence in this case, was the fellow-servant of the plaintiff, and, if he was negligent in any of the matters complained of, the defendant is not liable to the plaintiff therefor.

"Under the evidence in this case the furnishing of lights to light the sand pile was but an incident to the prosecution of the work in which plaintiff was engaged, and was in charge of the fellow-servants of the plaintiff, and any neglect to furnish or use sufficient lights was the neglect of such fellow-servants, for which the defendant is not responsible in this case."

All of which requests the court refused to give, and to which refusal the defendant thereupon duly excepted.

In order to determine whether the court was in error in refusing these requests, we must consider whether the doctrine of safe place to work applies to this case, and whether the plaintiff's injury was the result of one of the ordinary risks of the employment assumed by him. The work at which plaintiff was employed was in the open air, and not within any structure furnished by defendant. It was of the simplest and most ordinary character, performed with tools under no circumstances dangerous. There was no danger whatever in doing this work, except such as arose during the progress of the work as a necessary incident of the work itself, which was being performed by plaintiff and his fellow-servants. If any danger arose, it came through the prosecution of the work, and not through the condition of the place furnished by the master in which to work. *Petaja* v. *Mining Co.*, 106 Mich. 463 (32 L. R. A. 435); *Beesley* v. *F. W. Wheeler & Co.*, 103 Mich. 196 (27 L. R. A. 266); *Miller* v. *Thomas*, 15 App. Div. (N. Y.) 105. In this case the place was not furnished as in any sense a permanent place of work, but was a place in which the surrounding conditions were constantly changing. The rule of a safe place to be furnished by the master, therefore, does not apply. Plaintiff was a man 47 years of age. He had worked as a carpenter for many years, and had also

worked in different kinds of business accompanied by danger, where it was necessary for him to be very careful. He had shortly before this accident worked on a paving contract until the severe cold compelled suspension of the work. He knew that the weather was extremely cold and that the ground was frozen. He must be held chargeable with the knowledge that a sand pile lying out of doors was frozen and that digging into such pile would remove the support from the frozen crust. A master is not required to give warning of danger apparent and readily comprehended to a servant of ordinary intelligence and years of discretion. *Welch* v. *Brainard,* 108 Mich. 38. The injury resulted from one of the ordinary risks of his employment, assumed by him when he entered upon his work. *Miller* v. *Thomas,* supra, and cases cited. The danger in this case was one created by the servants of defendant in the prosecution of the work, in all probability partly before and partly during the time in which plaintiff himself was at work. Whether the condition was created before or after the plaintiff entered upon the common employment does not affect the question of defendant's liability. The risk was one incident to the common employment and was assumed by the employé. Dresser on Employers' Liability, § 90; *Hoar* v. *Merritt,* 62 Mich. 386.

Plaintiff's principal contention is that defendant was negligent in not furnishing sufficient lights; that if plaintiff had been put at work in the daytime he would have assumed all apparent risks, or risks which might have been known by the use of ordinary care and prudence, but, having been put to work when there was not sufficient light to observe his surroundings, he cannot be held to have assumed risks of which he had no knowledge. If the danger was one incident to the employment and the state of the weather, of which he is presumed to take notice, it was the duty of the plaintiff to observe his surroundings and inform himself of the condition of the sand pile when he went to work, and to keep himself informed

146 MICH.—16.

of its changed condition while the work progressed. The work, progressing steadily night and day, produced a constant changing of the place where the lights would be required. Lights would be necessary only where the men were at work at the sand pile. There was no duty resting upon defendant to light the entire premises. The necessity for lights at any particular place was then an incident to the business. There was a light inside the building. Provision had been made outside the building by an electric light on a post. It is not claimed but that this gave ample light at and about the entrance to the factory. Defendant employed an electrician, with abundant supplies of wire and lamps to place lights where required. There was also a supply of torches for the use of the men. The workmen at the sand pile knew whether lamps or torches were necessary at the place of work that night. If such lights were not asked for that night, or were not furnished, such neglect cannot be charged to defendant. Competent servants had been employed, and ample provision made for lighting by electricity and torches on the part of defendant, and those servants intrusted with the duty of placing or supplying lights so furnished were fellow-servants of the plaintiff. For a discussion of the principles involved, see cases cited supra, and authorities cited and discussed in those cases.

The contention of the defendant as to the law controlling this case was correct. The court was in error in refusing to give the above requests. It is not necessary to discuss other assignments of error.

The judgment is reversed, and no new trial ordered.

GRANT, BLAIR, MONTGOMERY, and OSTRANDER, JJ., concurred.