## SCENDAR *v.* WINONA COPPER CO.

1. MASTER AND SERVANT—SAFE PLACE—MINES AND MINING.
   Except in cases where a place is made unsafe by the work of the employé, or danger is created as an incident of the labor in which he is engaged, a master is charged with the duty of providing his employés with a reasonably safe place in which to work.

2. SAME—NEGLIGENCE—SAFE PLACE—ASSURANCE OF AGENT.
   Where plaintiff was directed by his employer where to work in its mine, was advised that he must rely on the captain, shift boss, and other employés as to the safety of the place in which he might be working, and where, considering a place in which he was ordered to perform service, dangerous, he called the attention of the captain to it, and, being advised, after an inspection, that it was safe, continued to work there, and three hours later suffered injuries from the fall of rock, the employer assumed the common-law duty to make the place reasonably safe and was not within the exceptions.

3. SAME—FELLOW-SERVANT.
   The duty could not be delegated to other employés so as to relieve the master of liability for their neglect.

4. SAME—INSPECTION—CARE REQUIRED.
   Where the alleged inspection was shown to have been less complete or thorough than inspections of its kind in defendant's mine usually were, its sufficiency was for the jury.

5. SAME—NEW TRIAL.
   Evidence upon the point that the attention of the captain and shift boss was not directed to the loose, overhanging rock, being in conflict, was properly left to the jury.

6. PLEADING—VARIANCE—AMENDMENT.
   A variance between declaration and proofs not being brought to the notice of the trial court, and being curable by amendment, will be regarded on error as cured by amendment.

Error to Houghton; Streeter, J. Submitted January 16, 1911. (Docket No. 86.) Decided May 3, 1912.

Case by Valentine Scendar against the Winona Copper Company for personal injuries. Judgment for plaintiff. Defendant brings error. Affirmed.

*Allen F. Rees,* for appellant.

*Anthony Lucas* (*Patrick H. O'Brien,* of counsel), for appellee.

BIRD, J. While plaintiff was working as a trammer on the ninth level of No. 3 shaft in the Winona mine, his partner noticed what appeared to be loose rock in the overhanging wall and called the attention of the captain and shift boss to it. They examined it, with several of the miners, and, after doing so, the captain told plaintiff and his partner that it was solid; that they need not be afraid of it, to go on with their work of filling the car. At this particular point the drift had been cut out but had not yet been timbered. In less than three hours after the captain assured them that it was solid, the rock fell and injured plaintiff. The plaintiff recovered in the trial court on account of his injuries, and the defendant now asks this court to set aside the judgment, principally for the reason that the facts disclosed by plaintiff's case bring it within the exception to the "safe place doctrine," which denies to the servant the right to recover for injuries incurred in an unsafe place created or constructed by himself and his co-servants. It is also strenuously insisted by the defendant that the case is ruled by *Petaja* v. *Mining Co.,* 106 Mich. 463 (64 N. W. 335, 66 N. W. 951, 32 L. R. A. 435, 58 Am. St. Rep. 505), and should be so declared by this court.

The rule is well settled that a master must at his peril provide his servants with a reasonably safe place in which to work. Exception, however, has been made to this rule where the unsafe place is made by the servant himself, or where the unsafe place is created as an incident of the work being performed by the servant and his co-laborer,

as in mining. This exception to the rule is well illustrated by the following cases: *Beesley* v. *F. W. Wheeler & Co.*, 103 Mich. 196 (61 N. W. 658, 27 L. R. A. 266); *Petaja* v. *Mining Co.*, *supra; Livingstone* v *Plate Glass Co.*, 146 Mich. 236 (109 N. W. 431), *Strepanski* v. *Plaster Co.*, 162 Mich. 696 (127 N. W. 706).

The difference between the *Petaja Case* and the one under consideration lies in the proofs which tend to show that, as regards. loose overhanging rock, the defendant relieved the trammers of the necessity of looking out for themselves and took upon itself the duty of making the place safe for them.

The plaintiff testified that it was not the custom of the trammers to examine the overhead wall for loose rock; that as a rule the captain and shift boss did it. Plaintiff's partner testified that they were not allowed to spend any time pinching down loose rock. John Braun, upon cross-examination, testified as follows:

" I am head mining captain of the Winona, and general superintendent of all the underground operations. I have knowledge of all the work underground, and I hire and discharge men. The shift bosses have authority to hire and discharge men, but I do most of the hiring and discharging. I have power to discharge men working in the mine. I tell the miners where to start cutting out, and tell the trammer bosses where to put their men to work, and tell the shift bosses where to start work of different kinds, and I have general observation of that work as it goes along. I have supervision of where the drifts are to start, and have the right to stop the work at any time. If the cutting-out is completed, I have the right to tell the men to start stoping, and I customarily have the superintending. I would have the right, if there was a question of safety of a place, to determine that, and if I ordered men to go to work there I would expect them to obey it.    *    *    *    It takes time to pinch down rock. Sometimes men will bar away for a day to get a piece down, and sometimes they have to put in powder to take it down. The trammers are not supposed, under their duties, to work under loose rock.

"*Q.* The company undertakes to keep their place reasonably safe in that regard, doesn't it ?

"*A.* That's the business of the miners.

"*Q.* Isn't it your business as underground superintendent to see that these trammers are kept safe ?

"*A.* Yes, but underground superintendents can't be every place at the same time.

"*Q.* But it is your duty to see that they have a safe place ?

"*A.* Yes, and I go personally and inspect the place. * * * The only way they would be protected would be to have some one take down the loose rock.  They are not paid to do it themselves; they are paid to-shovel dirt.

"*Q.* And the company undertakes that duty, as far as they are concerned, even in those cutting-outs, as far as the trammers are concerned, to take down the loose ground from the hanging ?  (Question objected to by defendant's counsel as incompetent.)

"*A.* Yes, sir; as far as in their power."

From this and other like testimony in the record, we think it sufficiently appears that the defendant, as regards loose overhanging rock, undertook to make the place reasonably safe for the trammers.  When the plaintiff was denied the time and privilege to use the ordinary precautions to protect himself and was forced to rely on the judgment of one more skilled as to the safety of the place, the defendant put itself outside of the exception to the safe place rule, and assumed the common-law duty to make the place reasonably safe.

It is argued that, if there were negligence in making the inspection of the walls of the drift, it was the negligence of the captain, shift boss, and miners, and not the negligence of the defendant.  The defendant directed the plaintiff where to work and instructed him that he was neither employed nor paid to "pinch down" rock from the overhanging walls, and that he must spend no time in making the place safe in that regard; that that work would be attended to by the captain, shift boss, and miners, and the place would be kept safe for him by them; and that he must abide their judgment whether or not the

place was safe.  After directions and assurances of this character have been made to plaintiff and he is injured while obeying and relying on them, the law will not permit the defendant to hide behind the captain, shift boss, and miners, and say it was their neglect and not its own. Whether the duty to make the place safe was imposed by law or assumed by the defendant, it could not delegate this duty in such a way as to relieve itself of liability. *Sears* v. *Ames*, 117 Mass. 413; *Van Dusen* v. *Letellier*, 78 Mich. 492 (44 N. W. 572); *Brown* v. *Gilchrist*, 80 Mich. 56 (45 N. W. 82, 20 Am. St. Rep. 496); *Morton* v. *Railroad Co.*, 81 Mich. 423 (46 N. W. 111); *Roux* v. *Lumber Co.*, 94 Mich. 607 (54 N. W. 492).

It is also argued by defendant that, conceding the captain was notified of the loose rock, as claimed by plaintiff, there is no evidence that an insufficient or improper inspection was made, neither was there any evidence that any other or different inspection could have been made, and therefore no negligence upon the part of defendant was shown.  The kind of an inspection and what tests were made were in evidence, and this fell far short of what the witness Stan Scendar testified was usually done at defendant's mine in making such inspections.  We think the evidence was sufficient to carry the question to the jury.

It is urged by the defendant that the weight of the evidence does not show that the attention of the captain and boss was directed to the loose overhanging rock, as sworn to by the plaintiff and his partner.  The testimony upon this point was in conflict.  It was properly submitted to the jury, and we are unable to say that the conclusion reached by them was against the weight of the evidence.

The point is made by defendant that there was a variance between the declaration and the theory upon which the case was submitted to the jury.  We have discovered no assignment of error which directly raises the point, and the record does not disclose that it was called to the

trial court's attention, either on the hearing or upon the motion for a new trial. We have no hesitancy, however, in saying that the variance was one which might have been cured by amendment, and it will now be regarded as amended.

The judgment of the trial court is affirmed.

MOORE, C. J., and MCALVAY, BROOKE, and OSTRANDER, JJ., concurred.