### WILLIS *v.* OSCAR DANIELS CO.

1. MASTER AND SERVANT—DEATH—MASTER'S LIABILITY—ASSUMPTION OF RISK—COMMON LAW.

   Where a carpenter, who had charge of the crew of men engaged in putting up and taking down forms in which concrete was poured, and who saw, or could have seen, in the exercise of ordinary care, just what the situation was, was killed by a fall, there could be no recovery from the master under the common law.

2. SAME—WORKMEN'S COMPENSATION LAW—APPLICABILITY — COMMON-LAW DEFENSES—ACTIONABLE NEGLIGENCE.

   Whether the workmen's compensation law (Act No. 10, Extra Session 1912, 2 Comp. Laws 1915, § 5423 *et seq.*) is

applicable or not, before a master, who has not signified his intention of coming under the provisions of the law, can be held liable for the accidental death of a servant in his employ, actionable negligence on the part of the master must be proven.

3. CONSTITUTIONAL LAW—MASTER AND SERVANT—WORKMEN'S COMPENSATION LAW—JURISDICTION OF STATE OVER LAND CEDED TO UNITED STATES.

Although section 1, art. 1, of the Constitution of Michigan, declares the State has jurisdiction over the territory embraced within its boundaries, described therein, land ceded by Act No. 17, Pub. Acts 1881, to the United States for St. Mary's Falls ship canal, lying within said boundaries, reserving to the State only the right to serve process in civil and criminal actions, is not subject to the operation of the State workmen's compensation act, passed in 1912 (Act No. 10, Extra Session 1912, 2 Comp. Laws 1915, § 5423).

4. MASTER AND SERVANT—WORKMEN'S COMPENSATION LAW—JURISDICTION—STATUTES—PROVISO—CONSTRUCTION.

The proviso in Act No. 17, Pub. Acts 1881, ceding to the United States land for St. Mary's Falls ship canal, *held*, to be for the purpose of providing that there should be no neutral territory where civil and criminal process might not be served, and is no authority for the contention that, in the absence of legislation upon the subject by congress, the legislature of Michigan might legislate upon the subject of employers and employed, rendering the provisions of the workmen's compensation law operative over the ceded lands.

Error to Chippewa; Fead, J. Submitted October 3, 1917. (Docket No. 4.) Decided February 23, 1918.

Case by Flora Willis, administratrix of the estate of John Willis, deceased, against the Oscar Daniels Company for the negligent killing of plaintiff's intestate. Judgment for defendant *non obstante veredicto*. Plaintiff brings error. Affirmed.

*McDonald & Kaltz*, for appellant.

*Davidson & Hudson*, for appellees.

MOORE, J.   This case is brought to recover damages for the death of the husband of the plaintiff.   He was employed by defendant from the last of July, 1915, to October 20, 1915, when he was instantly killed by a fall.   Defendant was engaged on a construction contract for the United States government in connection with St. Mary's Falls ship canal.   It was conceded the injury occurred on lands belonging to the United States government and included in the strip of land described in Act No. 17, Public Acts of Michigan for 1881.

At the close of plaintiff's case defendant moved for a directed verdict, which motion was overruled.   This motion was renewed at the close of the testimony and the motion was reserved under the statute.   The case was submitted to the jury and a verdict rendered for the plaintiff in the sum of $3,600.

In disposing of the motion reserved the trial judge filed a written opinion from which we freely quote:

"The question was reserved under Act No. 217, Pub. Acts 1915 (3 Comp. Laws 1915, § 14568), the cause was submitted to the jury upon the theory that the common-law defenses were not available to defendant because of the provisions of the workmen's compensation act (Act No. 10, Extra Session 1912, 2 Comp. Laws 1915, § 5423 et seq.), and the plaintiff had verdict.

"The question reserved depends upon the determination of what was in force at the place of the injury. The defendant was engaged in cement construction work, under contract with the United States, on the fourth lock of the St. Mary's Falls ship canal at Sault Ste. Marie.   It was conceded that the injury occurred on lands belonging to the United States government by cession from the State of Michigan to the United States under the provisions of Act No. 17 of the Public Acts of 1881.   *   *   *

"The St. Mary's Falls ship canal was for many years immediately succeeding the admission of Michigan as a State, a source of considerable controversy between

the State and National governments. The State always viewed the project as of national importance and concern and consistently and persistently sought to induce the general government to build the canal or to defray the cost thereof. After many failures, the efforts of the State finally met with success and in 1852 congress granted to the State the right of

"'Locating a canal through the public lands, known as the military reservation at the falls at Saint Mary's River in said State; and that four hundred feet of land in width extending along the line of such canal be, and the same is hereby granted, to be used by said State, or under the authority thereof, for the construction and convenience of such canal, and the appurtenances thereto, and the use thereof is hereby vested in said State forever, for the purposes aforesaid, and no other.'

"To cover the cost of construction, congress granted to the State 750,000 acres of the public lands. 10 Stat. at Large, 35, chap. 92.

"This grant was accepted by the State with all its conditions and restrictions on February 5, 1853. Act No. 38, Laws 1853. The construction of the canal was provided for by the same act and it was finally completed. * * *

"By Act No. 39, Laws 1873, it was provided:

"'That the jurisdiction of this State is hereby ceded to the United States of America over all such pieces or parcels of land as are required and selected by the United States for the enlargement and improvement of the Saint Mary's Falls ship canal. * * *

"'And this cession is upon the express condition that the State of Michigan shall so far retain jurisdiction with the United States in and over the tracts aforesaid, that all civil and criminal process issued under the authority of this State, or any officer thereof, may be executed on said lands, and in the buildings that may be erected thereon, in the same manner as if jurisdiction had not been ceded as aforesaid; and all crimes committed on said territory shall be cognizant by the State courts as though this act had not been made.'

"The financial condition of that part of the canal under the control of the State having finally become satisfactory, congress authorized the secretary of war to accept on behalf of the United States from the

State, the Saint Mary's canal and the public works thereon; whereupon the State authorized the board of control of the canal to transfer the 'canal and public works thereon, with all its appurtenances and all the right and title of the State of Michigan in and to the same, to the United States in accordance with' the provisions of the act of congress authorizing the secretary of war to accept the same. The cession was upon the express condition:

" 'That the State of Michigan shall so far retain concurrent jurisdiction with the United States over the Saint Mary's Falls ship canal, and in and over all lands acquired, or hereafter acquired, for its use; that all civil or criminal process issued by any court of competent jurisdiction, or officers having authority of law to issue such process, and all orders made by such court, or any judicial officer duly empowered to make such orders, and necessary to be served upon any such person, may be executed upon said Saint Mary's Falls ship canal, its lands, and in the buildings that may be erected thereon, in the same way and manner as if jurisdiction had not been ceded as aforesaid.' Act No. 17, Pub. Acts 1881.

"It appears that the State was not the fee owner of the premises upon which the canal was constructed but had only a defeasible title to a right of way. Prior to the grant of 1853 the National government had set the land apart for public purposes as a military reservation and had contested the right of the State to even cross the reserve without permission. It was 'supposed to be withdrawn from plenary local jurisdiction.' *Ryan* v. *Brown*, 18 Mich. 207. The grant of the right of way established the jurisdiction of the State over the premises but the claims which had been made may possibly account for the restricted reservation of jurisdiction upon the cession of the canal back to the United States in 1881.

"The specific question to be determined is whether the cession by the State to the United States under the act of 1881 vested the civil jurisdiction in the United States or whether it still rests in the State. If jurisdiction is still in the State, the compensation law of 1912 is in effect over the premises and the defendant is not entitled to maintain the common-law defenses. If jurisdiction is in the United States, those defenses

are open to it, and, under the proofs, would require the entry of a judgment *non obstante veredicto.*

"By Art. 1, Sec. 8, subd. 17, of the Constitution of the United States, congress is given power

" 'To exercise exclusive legislation in all cases whatsoever over such district * * * as may * * * become the seat of government of the United States, and to exercise like authority over all places purchased by the consent of the legislature of the State in which the same shall be, for the erection of forts, magazines, arsenals, dock yards, and other needful buildings.'

"The mere citation of this provision does not settle the question. * * *

"The rights of the respective governments must depend upon the effect of the statutes by which the State ceded the land and jurisdiction to the United States. In this connection counsel for plaintiff contends that jurisdiction was not acquired by the United States because the cession of the canal was not for a purpose within the specified purposes of the Constitution; citing *Mayor, etc., of New Orleans* v. *United States,* 10 Pet. (35 U. S.) 662, 737, where the court used this language:

" 'Special provision is made in the Constitution for cession of jurisdiction from the States over places where the Federal government shall establish forts and other military works. And it is only in these places, or in the Territories of the United States, where it can exercise a general jurisdiction.'

"The later cases and the contemporaneous construction of the constitutional provision by the legislature of the States do not sustain the *dicta* above quoted that the jurisdiction of the United States can obtain only in forts and other military works and in Territories; nor do they sustain the contention of plaintiff's counsel that a basic distinction is drawn in the Constitution between lands devoted to the 'private' purposes of the government, such as forts, arsenals, etc., and those devoted to its 'public' purposes and used for the benefit of the general people, such as canals; and that in the latter exclusive jurisdiction cannot be vested in the United States. The general term, 'other needful buildings,' following the specific words, 'forts, magazines, arsenals, dock yards,' has not been given

the restricted construction usually applicable to statutes, that general words following specific words are confined to the same class as those specifically set up.

"Exclusive jurisdiction under proper cession, has been sustained in the following instances: A National home for disabled volunteer soldiers, *Foley* v. *Shriver*, 81 Va. 573; *Sinks* v. *Reese*, 19 Ohio St. 306; postoffices and Federal court houses, *State* v. *Mack*, 23 Nev. 365; customs houses, *Sauer* v. *Steinbauer*, 14 Wis. 70; cemeteries, *Wills* v. *State*, 50 Tenn. 141.

"The legislature of this State has many times indicated its understanding of the purposes for which exclusive jurisdiction may be ceded to the Federal government. Thus, usually with the reservation of jurisdiction to serve process and sometimes with a reservation of criminal jurisdiction, the State has ceded jurisdiction to the United States in the following instances, * * * and, as allied with the canal in question, over lands of the Hay Lake channel in St. Mary's River, Act No. 104, Pub. Acts 1889; and numerous other lands, note to 4 How. Stat. (2d Ed.) § 10151.

"The term 'other needful buildings' as used in the Constitution, has thus been given a broad rather than a restricted interpretation by the courts and our legislature. * * * .

"No court of last resort seems to have passed upon the precise question here involved but the only judicial authority cited held that canal locks and dams are within the meaning of the constitutional term 'needful buildings.' *United States* v. *Tucker*, 122 Fed. 518.

"In view of the unanimity of the legislative and judicial authority it must be held that the St. Mary's Falls ship canal is property over which the State may cede and the United States acquire and exercise exclusive legislative jurisdiction. * * *

"In the Act No. 17, Pub. Acts 1881, instead of retaining concurrent general jurisdiction, as claimed by plaintiff, the State retained concurrent jurisdiction only in so far that civil or criminal process or court orders may be executed upon the canal lands in the buildings thereon in the same way and manner as if jurisdiction had not been ceded. This condition and reservation have no effect upon the cession of legislative authority and do not reserve to the State any

jurisdiction other than to serve its process on the lands. * * *

"It is further contended that the laws of the State of Michigan continue to operate over the ceded territory inasmuch as congress has passed no further law extinguishing the State's authority. Were the workmen's compensation law in effect at the time of the cession of the canal in 1881, that law would undoubtedly govern the liability of the master for torts done to the servant upon such premises so long as congress did not take action. Laws in force in ceded territory continue in force until changed by the new sovereign. *Chicago, etc., R. Co.* v. *McGlinn,* 114 U. S. 542; *Barrett* v. *Palmer,* 135 N. Y. 336 (17 L. R. A. 720) ; *American Ins. Co.* v. *Canter,* 1 Pet. (26 U. S.) 511.

"These decisions, however, do not sustain the proposition that statutes taking effect after the cession will be in force in the ceded territory. *Crook* v. *Hotel Co.,* 54 Fed. 604. * * *

"In the case at bar, the question is not one of power over subjects or departments of legislation but is one of territorial jurisdiction. After the cession of property and jurisdiction over it, that property is not a part of the State nor subject to its laws. The same contentions here made were urged in the case of *Western Union Tel. Co.* v. *Chiles,* 214 U. S. 274, where it was held that a statute of Virginia imposing a penalty for the nondelivery of a telegram had no force within the limits of the Norfolk navy yard, jurisdiction over which had been ceded to the United States prior to the enactment of the law imposing the penalty. This case, moreover, disposes of plaintiff's contentions regarding the United States not being interested in the present litigation and that the operation of the State law in no way affects the purpose for which land or jurisdiction was ceded. See, also, *Western Union Tel. Co.* v. *Brown,* 234 U. S. 542; *Kaufman* v. *Hopper,* 151 App. Div. (N. Y.) 28.

"The plaintiff further contends that the United States is not in possession of the premises but that defendant is in possession under authority from the Federal government and consequently State laws apply, citing *Barrett* v. *Palmer,* 135 N. Y. 336. That was a case where jurisdiction had been ceded by the State

of New York over lands belonging to the United States and used and occupied as a navy yard. The grant contained the provision that: .

" 'The United States may retain such use and jurisdiction as long as the premises described shall be used for the purposes for which jurisdiction is ceded and no longer.'

"Thereafter, the Federal government leased a portion of the property to the city of Brooklyn for market purposes. The action was brought to recover damages for an unlawful ouster from the possession of two stands in such market. The New York court held that the State courts had jurisdiction because as nothing had

" 'been done by congress to displace the laws of this State and the jurisdiction of its courts in regard to private rights and remedies with respect to the lands ceded for the purpose of a navy yard, in Brooklyn, these matters remain unaffected by the act of cession.'

"The Supreme Court of the United States in *Palmer* v. *Barrett,* 162 U. S. 399, affirmed the decision but did not adopt the reasoning. It held that the lease to the city was a violation of the condition of cession and so long as it remained in force, the exclusive authority of the United States was suspended. The court expressly refrained from deciding what would have been the effect of the lease had the reservation clause above quoted not been in the act of cession.

"In the case at bar there is no such reservation nor lease of possession. The defendant, if it may be said to be in possession of the fourth lock, is in possession only as a contractor for the United States, engaged in constructing work directly pertinent to the purpose of the cession, and it is always subject to the inspection, supervision and control of government engineers. There is no exclusive possession given it for its own benefit, nor has the government abrogated any of its rights of control. Moreover, the mere fact that the lock is not completed or that it may not be in actual use as an operating lock nor that the whole canal may not be directly used in the work of navigation would not oust the jurisdiction of the United States. *Benson* v. *United States,* 146 U. S. 325.

"Act No. 17 of the Public Acts of 1881, therefore, especially when read in connection with Act No. 39 of the Laws of 1873, operated to cede to the United States exclusive jurisdiction over the land conveyed to them by such act. It is fundamental that the cession of territory by one sovereignty to another extinguishes the jurisdiction of the former except as to reservations. The reservation of the right to execute civil and criminal process in the ceded lands merely emphasizes the character of the cession and reserves no other right to the State of Michigan. *In re Ladd,* 74 Fed. 31; *State* v. *Mack,* 23 Nev. 365, and other cases above cited. In consequence of such jurisdiction vesting in the Federal government, the laws of the State of Michigan, enacted after the cession, are not applicable to the case at bar.

"The defendant was, therefore, entitled to maintain the common-law defenses and inasmuch as those defenses would 'preclude recovery, under the facts, the defendant is entitled to have judgment, notwithstanding the verdict."

A judgment was entered accordingly which is reviewed here by writ of error.

The questions involved from the viewpoint of the appellant are:

1. Does the workmen's compensation act of Michigan govern the relations of employer and employee respecting injury, or death, to an employee sustained in the course of employment on work being done for the Federal government under contract, and on land ceded by the State to the United States for commerce purposes, but which land is within the State of Michigan?

2. Regardless of the application of the workmen's compensation act, should the verdict of the jury in plaintiff's favor stand?

Taking up the last of the questions first:

The record disclosed that Mr. Willis had worked as a carpenter for several years. He had worked on the contract which defendant had with the government from July until in October. He had charge of a crew

of men in putting up and taking down forms like the one upon which he was at work when killed, in which concrete was poured. There is some conflict as to whether the form was being taken down or was being built higher when the accident occurred, but there is no conflict upon the question of whether the deceased saw or could have seen in the exercise of ordinary care just what the situation was. If the litigation is controlled by the common law it was the duty of the trial judge, upon the record made, to direct a verdict for the defendant under many cases decided by this court, some of which are *Beesley* v. *F. W. Wheeler & Co.*, 103 Mich. 196; *Pilucki* v. *Spring Works,* 117 Mich. 111; *Nephew* v. *Whitehead,* 123 Mich. 255; *Livingstone* v. *Plate Glass Co.,* 146 Mich. 236; *Strepanski* v. *Plaster Co.,* 162 Mich. 696; *Scendar* v. *Copper Co.,* 169 Mich. 665; *Fryezynski* v. *Leather Co.,* 171 Mich. 113; *Poirier* v. *Lumber Co.,* 182 Mich. 678.

Returning to the first question presented by appellant, namely, that of jurisdiction. Before entering upon its discussion we think it well to say that even conceding that the employer's liability law is operative over the place of the accident, we think it doubtful if the record discloses a case of actionable negligence on the part of the employer.

In support of the claim that the workmen's compensation act of Michigan applies to the facts in this case, appellant calls attention to section 1, article 1, of the Constitution of Michigan, which reads:

"The State of Michigan consists of and has jurisdiction over the territory embraced within the following boundaries" (and then the boundaries are described).

The contention is made that because of this and the proviso contained in the act of 1881 the State retains the right to legislate about matters relating to internal, municipal, and local affairs, and particularly

over the rights and remedies of persons in their private transactions, such as between employer and employee. We quote from the brief:

"We submit it most certainly does include such legislative jurisdiction. If this is so, could the legislature cede, grant or relinquish this jurisdiction, even though we agree (and we do not) to the interpretation placed upon the act of cession by the trial court?

"It is fundamental that the legislature of the State may not enact any legislation that contravenes an express or necessarily implied provision of the Constitution. The people of the State of Michigan through their Constitution have said that their State "has jurisdiction over the territory" involved in this case. This, we have said, necessarily includes legislative jurisdiction over the matters stated and like matters, and such as the one involved here. Could the legislature, therefore, by any enactment limit, restrict, cede, or grant away this legislative jurisdiction?

"Moreover every person, firm, private and public corporation employing labor is subject to the provisions of Act No. 10, Public Acts of 1912 (Special Session), known as the workmen's compensation law. If they elect to come under the act, they must pay compensation for injuries or death of employees sustained in the course of employment. If they do not elect to come under its provisions they are barred from interposing the defenses commonly called the common-law defenses. The defendant is a private corporation operating within the State of Michigan, and nowhere by the provisions of the act is it * * * excluded from its provisions."

Counsel lay great stress upon the following cases which they claim support their contention: *Barrett* v. *Palmer*, 135 N. Y. 336; *In re O'Connor*, 37 Wis. 379; *Fort Leavenworth R. Co.* v. *Loewe*, 114 U. S. 525, and *Chicago, etc., R. Co.* v. *McGlinn*, 114 U. S. 542. Other authorities are also cited which may be found by referring to the brief of counsel. A reference to the cases cited show each of them to be distinguishable from the instant case.

We quote from *Fort Leavenworth R. Co.* v. *Loewe, supra:*

"These authorities are sufficient to support the proposition which follows naturally from the language of the Constitution, that no other legislative power than that of congress can be exercised over lands within a State purchased by the United States with her consent for one of the purposes designated; and that such consent under the Constitution operates to exclude all other legislative authority.

"But  *  *  *  where, therefore, lands are acquired in any other way by the United States within the limits of a State than by purchase with her consent, they will hold the lands subject to this qualification: that if upon them forts, arsenals, or other public buildings are erected for the uses of the general government, such buildings with their appurtenances as instrumentalities for the execution of its powers will be free from any such interference and jurisdiction of the State as would destroy or impair their effective use for the purposes designed. Such is the law with reference to all instrumentalities created by the general government. Their exemption from State control is essential to the independence and sovereign authority of the United States within the sphere of their delegated powers. But when not used as such instrumentalities, the legislative power of the State over the places acquired will be as full and complete as over any other places within her limits."

In each of the cases cited it will be found either that there was an express reservation of jurisdiction, as in the case from which we are quoting, or as in the case of *Barrett* v. *Palmer, supra,* the land was not used for the purpose for which it was ceded.

After all is said, the instant case must be decided upon the construction put upon the following, contained in the act of 1881:

"*Provided,* that this cession is upon the express condition that the State of Michigan shall so far retain concurrent jurisdiction with the United States over the Saint Mary's Falls ship canal, and in and over all

lands acquired or hereafter acquired, for its use; that any civil or criminal process issued by any court of competent jurisdiction, or officers having authority of law to issue such process, and all orders made by such court, or any judicial officer duly empowered to make such orders, and necessary to be served upon any such person, may be executed upon said Saint Mary's Falls ship canal, its lands, and in the buildings that may be erected thereon, in the same way and manner as if jurisdiction had not been ceded as aforesaid."

Does this mean, as contended by appellant, that, in the absence of legislation by congress, the legislature of Michigan may legislate upon the subject of employers and employed and have the legislation as effective over the ceded lands as though there had been no cession of the lands? If, though the lands were ceded in 1881, the legislature may make effective in 1912 an employers' liability law, where is the limitation upon legislative authority? May it fix the hours of labor and thus indirectly affect the contracts which the Federal government may be able to make in relation to the construction of locks and other governmental work? Such a construction of the proviso would be exceedingly embarrassing to the general government and we think is untenable. See *United States* v. *Cornell*, 2 Mason, 60; *United States* v. *Tucker*, 122 Fed., at p. 521, and the many cases cited there; *Benson* v. *United States*, 146 U. S. 325. Other authorities are found in the brief of the appellee.

The jurisdiction reserved was for the purpose of providing there should be no neutral territory where civil and criminal process might not be served.

Judgment is affirmed, with costs to the defendant.

BIRD, STEERE, BROOKE, FELLOWS, STONE, and KUHN, JJ., concurred with MOORE, J.

OSTRANDER, C. J. It is said in the opinion of Justice MOORE:

"Returning to the first question presented by appellant, namely, that of jurisdiction. Before entering upon its discussion, we think it well to say that, even conceding that the employers' liability law is operative over the place of the accident, we think it doubtful if the record discloses a case of actionable negligence on the part of the employer."

I am in doubt as to the meaning, and, given any meaning, the significance of the last-quoted sentence, and express no opinion upon the point stated. I concur in affirming the judgment.