CRANE v. LEONARD, CROSSETTE & RILEY.

1. MASTER AND SERVANT—WORKMEN'S COMPENSATION ACT—RELATIONS CONTRACTUAL.

The Michigan workmen's compensation act being an optional one, the relations of the employer and employee thereunder are contractual, the employer agreeing to pay, and the employee agreeing to accept, compensation in case of accident in accordance with the provisions of the act.

2. SAME—STATUTE—CONSTRUCTION—LOCUS OF ACCIDENT NOT LIMITED TO STATE.

The concluding words of the title to the workmen's compensation act "restricting the right to compensation or damages in such cases to such as are provided by this act," held, not intended to limit the locus of the accident, or to intend that compensation for injuries should be allowable only where the accident occurred within the State.

3. SAME—STATUTE—CONSTRUCTION—PLACE OF HEARING—ACCIDENT OUTSIDE OF STATE.

The provision in section 8, pt. 3, of the act (2 Comp. Laws 1915, § 5461), that the hearings of the committee of arbitration "shall be held at the locality where the injury occurred," held, not convincing that it was thereby intended that compensation should be refused because it is impracticable to hold the hearing on the very place of the accident, as where it occurs outside of the State.

4. SAME—STATUTE—CONSTRUCTION—ACCIDENT OUTSIDE OF STATE.

If the provisions in section 13, pt. 3, of the act (2 Comp. Laws 1915, § 5466), providing for the presentation of a certified copy of the award "to the circuit court for the county in which such accident occurred," and further providing for judgment "without notice," are not applicable, because the accident occurred outside the State, recovery of compensation is not thereby barred, since there is nothing in the act to prevent suit upon the award as upon a common-law arbitration.

On extraterritorial application of workmen's compensation acts; conflict of laws, see notes in L. R. A. 1916A, 436; L. R. A. 1917D, 83; 3 A. L. R. 1351.

5. SAME—RIGHTS OF EMPLOYEE ACCOMPANY HIM OUTSIDE OF STATE.
   The rights of an employee, under a Michigan contract to
   be performed within and without the State, to the com-
   pensation provided by the workmen's compensation act,
   being contractual, accompany the employee wherever he
   goes within the ambit of his employment.

Certiorari to Industrial Accident Board. Submitted
April 7, 1921. (Docket No. 39.) Decided June 6,
1921.

Fidelia Crane presented her claim for compensation
against Leonard, Crossette & Riley for the accidental
death of her husband in defendant's employ. From
an order awarding compensation, defendant and the
Southern Surety Company, insurer, bring certiorari.
Affirmed.

*Clark C. Coulter,* for appellants.

*Griswold & Cook,* for appellee.

FELLOWS, J. Plaintiff's husband, George M. Crane,
was in the employ of defendant Leonard, Crossette &
Riley, an Ohio corporation authorized to do business
in this State. It was engaged in buying and shipping
produce and operated at about 40 points in Michigan,
among the points being Greenville where Mr. Crane
was employed. It had elected to come under the
workmen's compensation act and defendant Southern
Surety Company carried the risk. On December 11,
1919, the company shipped out three cars of potatoes,
one to Chicago and the others to St. Louis. It was
the custom of the company at that time of year to
have an employee accompany the shipment for the pur-
pose of keeping up a fire in the cars to prevent the
freezing of the potatoes. Mr. Crane was employed
for this purpose. The cars arrived in Chicago the
following day. In the evening of December 13th, Mr.

Crane was found unconscious in one of the cars with a badly crushed skull. He was hurried to a hospital but died soon after. The evidence is convincing that he must have received his injury after the cars arrived in Chicago. The board awarded compensation upon the theory that the act applied whether the death occurred within or without the State.

We, therefore, have submitted to us for the first time the question, and it is the only question in the case, of whether the employer who has elected to become subject to the workmen's compensation act is liable, where the employee, who has also elected to become subject to the act, received his injuries outside the State while in the course of the employment. The case has been ably briefed and the labors of the court materially lightened by the research of counsel.

The contention of defendants' counsel that the act does not apply where the accident occurs outside the State finds support in the English cases. See *Hicks* v. *Maxton*, 1 B. W. C. C. 150; *Tomalin* v. *S. Pearson & Son, Ltd.*, 2 B. W. C. C. 1; *Schwartz* v. *Indiarubber, etc., Co.*, 5 B. W. C. C. 390. These cases unequivocally hold that no liability exists where the accident occurs outside the British Empire.

Undoubtedly the earliest case in this country is *Gould's Case*, 215 Mass. 480 (102 N. E. 693, Ann. Cas. 1914D, 372). This is a case of first impression so far as the rule in this country is concerned. In it the Massachusetts court followed the English holdings and found insuperable difficulties in holding otherwise. We shall not attempt to distinguish this case from the holdings in other states where the same question has arisen, nor is there such a difference between the Massachusetts act and our own as to justify us in saying that it is not applicable. If we accept it as controlling authority, it would necessarily follow that defendants' contention must be sustained. That it

has not been followed in many States, and that its doctrine has met much adverse criticism will be demonstrated by an examination of the authorities to which we shall presently refer.   Mr. Bradbury followed it in the first edition of his work (see Bradbury on Workmen's Compensation [1st Ed.], p. 44), but when the second edition was prepared he had modified his views (see 1 Bradbury on Workmen's Compensation [2d Ed.], pp. 50, 51), and in the third edition (see Bradbury on Workmen's Compensation [3d Ed.], p. 92), he said:

"Therefore, now, as in the second edition of this work, partially receding from the position taken in the first edition of this work, although that position has been sustained by eminent authority, it is believed that the doctrine which must be established finally will be, in effect, that the law of the place where a contract of employment is made will govern the rights and liabilities of employees and employers to claim and to pay compensation."

That Mr. Bradbury was convinced that the weight of authority was against the Massachusetts holding and that it should not be followed is evidenced by a note prepared by him to the case of *Spratt* v. *Sweeney & Gray Co.*, 168 App. Div. 403 (153 N. Y. Supp. 505), found in 9 N. C. C. A. 918. After citing the *Gould Case* and early holdings of our board and the Wisconsin commission, he said:

"Upon more mature deliberation, however, other courts came to a contrary conclusion. They held that inasmuch as the liability of an employer to pay compensation for injury to an employee was essentially a contractual one under the workmen's compensation acts, that such statutes had extra-territorial effect, to the extent that where the employer and the employee were both residents of the State where the contract of employment was made, the law of that State would be applied, even though the accident happened without the State."

After considering some of the authorities he continues:

"If, however, a claim under a compensation act is based on a contract, either express or implied, then there is no more reason why such a claim should not be decided in accordance with the law of the place where the contract is made, any more than there would be for a claim for wages in accordance with the law where the contract was made, even though the employees performed the services in several States."

The Illinois court also sustains the contention of defendants' counsel. *Union Bridge Co.* v. *Industrial Commission*, 287 Ill. 396 (122 N. E. 609). While it is true that by the title to the Illinois act it is limited to "accidental injuries or deaths suffered    *    *    * within the State," the court did not rest decision on this fact alone but followed the doctrine of the *Gould Case*.

The supreme court of California in *North Alaska Salmon Co.* v. *Pillsbury*, 174 Cal. 1 (162 Pac. 93, L. R. A. 1917E, 642), held that the act of that State did not cover accidents occurring outside the State. But the California act is a compulsory one, not optional as is ours. This undoubtedly had much to do with the result in this case which was disposed of on rehearing.

Mr. Honnold, treating of this subject (1 Honnold on Workmen's Compensation, § 8), says:

"In view of the conflict of authority and differences between the various acts, it is difficult to formulate a precise rule relative to the extra-territorial operation of these laws; but it may be stated on the weight of authority that acts not construed to be contractual in character do not, in the absence of unequivocal language to the contrary, apply where the injury occurs outside the State, while, on the other hand, acts construed to be contractual protect one injured outside the State, where the contract of employment was made

within the State and is governed by the laws of the State."

We shall now consider the decision of some of the States sustaining the contention of plaintiff's counsel. The gist of the later decisions is quite well stated by the supreme court of Colorado in *Industrial Commission* v. *Insurance Co.*, 64 Colo. 480 (174 Pac. 589), where this question was before that court. After considering the *Gould Case* and quoting from Bradbury's second edition, it is said:

"The later authorities in this country base the conclusion chiefly on the proposition that, under voluntary compensation statutes such as ours, the cause of action of petitioner is *ex contractu*, and that the *lex loci contractus* governs the construction of the contract and determines the legal obligations arising under it.

"The provisions of the compensation act are to be construed as written into the contract, and therefore a part of it."

The question has been before the courts of New Jersey on several occasions. In *Rounsaville* v. *Railroad Co.*, 87 N. J. Law, 371 (94 Atl. 392), it was said:

"We are now dealing with the simpler question, whether a New Jersey court will enforce a New Jersey contract according to the terms of a New Jersey statute. The question hardly calls for an answer. The place where the accident occurs is of no more relevance than is the place of accident to the assured in an action on a contract of accident insurance, or the place of death of the assured in an action on a contract of life insurance."

In *Deeny* v. *Wright & Cobb Lighterage Co.*, 36 N. J. L. J. 121, where the question was before the court, it was said:

"It appears that there is an implied contract to compensate for injuries arising out of and in the course of the employment and under it all other methods and rights to any other form of compensation are relin-

quished. The statute can have no extra-territorial effect, but it can require a contract to be made by two parties to a hiring that the contract shall have an extra-territorial effect. The contract is binding on the employee himself and upon the employer, and it is conclusively presumed that the parties have accepted the provisions of section 2 and have agreed to be bound thereby. The method of termination of the contract is provided for in paragraph 10. It would seem that the reasonable construction of the statute is that it writes into the contract of employment certain additional terms. The cause of action of petitioner is *ex contractu*. The *lex loci contractus* governs the construction of the contract and determines the legal obligations arising from it."

And in *Foley* v. *Home Rubber Co.*, 89 N. J. Law, 474 (99 Atl. 624), compensation was awarded for the death of an employee who went down with the Lusitania on his way to Europe in the master's service.

Plaintiff's contention is supported by *Kennerson* v. *Thames Towboat Co.*, 89 Conn. 367 (94 Atl. 372). This is an exhaustive opinion. We shall not quote from it. It will be found in L. R. A. 1916A, 436, accompanied by a note having reference to the authorities.

We shall not consider the earlier New York cases disposed of by courts other than the court of last resort as the court of appeals of that State has had the question before it and has determined it in accordance with plaintiff's contention in the case of *Matter of Post* v. *Burger & Gohlke*, 216 N. Y. 544 (111 N. E. 351, Ann. Cas. 1916B, 158). It was there said:

"The act, in view of its humane purpose, should be construed to intend that in every case of employment there is a constructive contract between the employer and employee, general in its terms and unlimited as to territory, that the employer shall pay as provided by the act for a disability or the death of the employee as therein stated. The duty under the statute defines the terms of the contract."

The supreme court of Rhode Island fully considered the question in an exhaustive opinion in *Grinnell* v. *Wilkinson*, 39 R. I. 447 (98 Atl. 103, L. R. A. 1917B, 767, Ann. Cas. 1918B, 618), and concluded:

"We are of the opinion that the reasoning of the cases above cited from New York, New Jersey and Connecticut is quite applicable to the case at bar; that under the workmen's compensation act of Rhode Island the relation of employer and employee is contractual and the terms of the act are to be read as a part of every contract of service between those subject to its terms; that on principle and in reason and in view of the purpose, scope and character of the act it should be construed and held to include injuries arising out of the State as well as those arising within it; and that the weight of authority upon acts similar to our own gives full support to our conclusion."

The question was before the supreme court of Iowa in *Pierce* v. *Storage Co.*, 185 Iowa, 1346 (172 N. W. 191). We quote quite extensively from what was there said:

"We hold that we are not precluded from finding that our own statute covers injuries sustained in another State because the act does not, in terms, declare that the statute shall have such effect, and that we may find it has such effect, because its language is broad enough to cover such injuries, and that to construe it as covering them effects the broad, beneficial object of the enactment.    *    *    *

"Our statute is confessedly elective. We are told that no distinction in construction is to be based upon whether the act is compulsory or elective. That is true as to some provisions of compensation acts. But that the statute is elective has controlling bearing on one thing that is most highly important. Where the statute is elective as to both employer and employee, payment of compensation is not the performance of a statute duty, but the performance of conditions in the contract of hiring, which conditions are in the contract by means of reading the compensation statute into the

214—Mich.—15.

contract.   *   *   *   The entire structure of the
Iowa act not only fails to prohibit such a contract, but,
by being elective, creates a contractual relation under
a contract providing for settlement on a standard fixed
by the Iowa act.  Such a contract is no more objection-
able than one providing for a common-law arbitration.
See *Hunter* v. *Coal Co.*, 175 Iowa, 245 (154 N. W.
1037, 157 N. W. 145, L. R. A. 1917D, 15, Ann.
Cas. 1917E, 803).  Under such a contract, the
employee could not refuse to obey, if the master
directed him to leave the State to perform an
act in the course of the employment.  If he did
obey, there is no reason why the master should be
allowed to repudiate that part of the contract of em-
ployment which provided how compensation should be
made if the servant suffered an injury while obeying
this direction.  Such a contract protects both, and
defines the rights of both.  The master is assured of
the limitations of his liability.  The servant is assured
of definitely fixed compensation, mutually agreed upon
as adequate, and that he will receive the same prompt-
ly, and without the vexation or expense of litigation.

"We hold that the employee in this case has a valid
contract, which allows him to recover compensation ac-
cording to the terms of the statute for an injury suffer-
ed in Nebraska; that the case stands precisely as if it
had been expressly contracted that, for an injury
suffered outside of the State, the compensation due
should be determined by the terms of the Iowa
statute."

The West Virginia court was called upon to con-
sider the question in *Gooding* v. *Ott*, 77 W. Va. 487
(87 S. E. 862, L. R. A. 1916D, 637), where the court
said:

"A distinction has been noted in some of the authori-
ties between cases arising under compulsory statutes
and those controlled by statute, as in New Jersey, and
we think in this State, which are optional.  Where the
statute compels submission by the employer and em-
ployee, there is no contract, as a general rule, enforce-
able outside of the State.  But where, as in New Jersey
and in this State, the statute makes acceptance

optional, and the parties freely enter into the contract of employment with reference to the statute, the statute should be read into the contract as an integral part thereof, binding the parties, and enforceable in any jurisdiction the same as any other contract."

This case was followed in *Foughty* v. *Ott*, 80 W. Va. 88 (92 S. E. 143).

The supreme court of Minnesota in *State, ex rel. Chambers,* v. *District Court,* 139 Minn. 205 (166 N. W. 185, 3 A. L. R. 1347), had this question before it. It called attention to the diversity of authorities and tersely stated:

"The weight of authority supports the view that, under an elective act like ours and with facts such as are present, an accidental injury though it occurs outside the State is compensable. This view we adopt."

The supreme court of Wisconsin considered the question in the very recent case of *Anderson* v. *Miller Scrap Iron Co.,* 169 Wis. 106 (170 N. W. 275, 171 N. W. 935), and there said:

"As has been said, the workmen's compensation act is based upon the economic theory that it is in the interest of the general welfare that damages arising from injuries sustained by persons engaged in a particular industry shall be borne by that industry. The liability of the employer at common law was limited to cases where negligence could be established. Where negligence was established the burden was borne in the first instance by the employer, who ordinarily had an opportunity to pass all or part of the burden on. In cases where negligence could not be established, the injured employee bore the entire burden with no opportunity to pass it on. Under the workmen's compensation act the burden falls upon society at large, and is not borne entirely either by the employer or by the employee. If the application of the law be limited to injuries occurring within this State, then in the case of injuries sustained without the State the employer will not be liable except he be negligent, and where he is not negligent the whole loss must be borne by the

employee, and the whole legislative purpose is, as to injuries sustained without the State, defeated. We have extensive borders; thousands of employees are passing out of and into Wisconsin daily, and almost hourly, in the discharge of their ordinary duties. Can it be that the legislature intended that every time these employees crossed the State line their right to compensation for injuries incidental to and growing out of their employment should be changed, and that as to injuries which occur beyond the State line the old system instead of the new should apply?    *    *    *

"If the workmen's compensation acts of the several States are to be given effect so as to make them general in their application, they must be held to apply to injuries to employees wherever they occur. If accidents occurring without the State are to be in one class and accidents occurring within the State are to be in another class, every State might have a workmen's compensation act and yet both the old and the new systems would still be in force and the legislative purpose would not be accomplished. The construction here placed upon the act will give the legislative intent full effect, and if recognized by the courts of sister States will give every employee the remedy provided by the workmen's compensation act under which his contract of employment was made."

The authorities, and particularly the later ones, lead irresistibly to the conclusion that where the act is an optional one, as is ours, the relations are contractual and the provisions of the act become a part of the contract of employment, the employer agreeing to pay and the employee agreeing to accept compensation in case of accident in accordance with the provisions of the act. That the relation under our act is contractual has been recognized by this court. In *Mackin* v. *Detroit Timkin Axle Co.*, 187 Mich. 8, it was said:

"In some States the law is made compulsory upon both parties or upon one with choice to the other, giving rise to questions which need not be considered here, since the law in this State, as applied to this case, be-

comes operative upon neither employer nor employee who does not expressly or impliedly consent; but, if the employer so elects, and the employee does not give written notice to the contrary, he is conclusively presumed to have consented, and comes under the act."

And in *Dettloff* v. *Hammond, Standish & Co.,* 195 Mich. 117, it was said:

"On the other hand, the liability of the creamery company, by virtue of the workmen's compensation act, rests solely upon contract."

Reliance is placed on *Willis* v. *Oscar Daniels Co.,* 200 Mich. 19, to sustain defendants' position. But that case dealt with an accident on government land to an employee in the employ of a government contractor. It did not involve the question here before us. Commenting on this case we said in *Oscar Daniels Co.* v. *City of Sault Ste. Marie,* 208 Mich. 363:

"*Willis* v. *Oscar Daniels Co., supra,* may, and should, rest upon the ground that the State legislation sought there to be enforced affected the United States in a matter over which it had exclusive jurisdiction, namely, the building of a lock in the ceded territory."

But it is insisted by defendants' counsel that the act, being in derogation of the common law, must be strictly construed; that certain provisions of the act show a legislative intent that it shall not apply to accidents occurring outside the State. Manifestly if the act shows such intent it is our duty to so hold. It is first pointed out that the concluding words of the title are:

"And restricting the right to compensation or damages in such cases to such as are provided by this act."

We cannot feel that the legislature in the use of this language intended to limit the *locus* of the accident, or to intend that compensation for injuries should only be allowable where the accident occurred within

the State. If such had been the intent of the legislature, a few simple words would have clearly expressed it. The other provisions which are thought to be persuasive are the provision in section 8 of part 3 (2 Comp. Laws 1915, § 5461) providing that the hearings of the committee of arbitration "shall be held at the locality where the injury occurred," and the provision found in section 13 of part 3 (§ 5466) providing for presentation of a certified copy of the award "to the circuit court for the county in which such accident occurred," and providing for judgment "without notice." Similar provisions to these were deemed persuasive to the Massachusetts court in the *Gould Case,* but as already indicated we do not follow that holding. The provision for the hearings of the committee of arbitration need not be literally followed, the hearing need not be held at the very spot the accident occurred. It was designed that it should be held at a convenient place for parties and their witnesses and does not make void a result reached at some other place in the absence of rights being prejudicially affected. It does not convince us that compensation should be refused where it is impracticable to hold the hearing on the very place of the accident. The other provision, it will be noted, permits rendition of judgment "without notice." We are not persuaded that this provision is exclusive. As pointed out by plaintiff's counsel, if judgment is desired without notice to the other party it may be entered under the provisions of this section, but if these provisions are not applicable there is nothing in the act which prevents suit upon the award as upon a common-law arbitration.

Both of these provisions are found in the part of the act dealing with "procedure," and not in the parts of the act dealing with liability. We must decline to follow defendants' counsel in this contention.

To recapitulate: Plaintiff's husband was employed in Michigan to work for defendant. The contract of employment was a Michigan contract and the workmen's compensation act became and was a part of it. Both parties agreed to be bound by its terms. The contract was to be performed within and without the State. Deceased met his death within the ambit of his employment. The rights being contractual accompanied the employee wherever he went within the ambit of his employment. This construction is within the legislative intent when we consider the purposes of the act. And this is the construction it must receive at our hands.

The award is affirmed.

STEERE, C. J., and MOORE, WIEST, STONE, CLARK, BIRD, and SHARPE, JJ., concurred.