**Michigan Supreme Court**
**Lansing, Michigan**

# Opinion

Chief Justice:
Clifford W. Taylor

Justices:
Michael F. Cavanagh
Elizabeth A. Weaver
Marilyn Kelly
Maura D. Corrigan
Robert P. Young, Jr.
Stephen J. Markman

FILED MAY 23, 2007

KENNETH KARACZEWSKI,

    Plaintiff-Appellee,

v                                                        No. 129825

FARBMAN STEIN & COMPANY and
NATIONWIDE MUTUAL INSURANCE COMPANY,

    Defendants-Appellants.

_____

BEFORE THE ENTIRE BENCH

CORRIGAN, J.

In this case, we consider whether a Florida resident who was injured in a Florida workplace accident may recover workers' compensation benefits in Michigan merely because he was hired in Michigan. We conclude that he cannot. The relevant portion of the Michigan Worker's Disability Compensation Act (WDCA), MCL 418.845, confers jurisdiction on the Bureau of Worker's Compensation, now the Workers' Compensation Agency, for out-of-state workplace injuries only if (1) the employee is a resident of Michigan when the injury occurs and (2) the contract of hire was made in Michigan. Accordingly, we

reverse the contrary Court of Appeals judgment awarding benefits and overrule

*Boyd v W G Wade Shows,* 443 Mich 515; 505 NW2d 544 (1993), upon which the

Court of Appeals relied.

## I. FACTUAL BACKGROUND AND PROCEDURAL POSTURE

The parties stipulated the relevant facts:

> Plaintiff was hired by defendant on October 4, 1984 to work in Michigan as a maintenance engineer. As of the date of hire, plaintiff was a resident of Detroit, Michigan and defendant employer was a resident employer in Michigan. The Contract of hire was made in Michigan. The Farbman Group continues to be a resident employer and is currently located at 28400 Northwestern Hwy, Southfield, Michigan.

> Plaintiff worked for defendant in Michigan from the date of hire until September 1, 1986, when defendant transferred him to Fort Lauderdale, Florida to assume the position of building superintendent. On January 12, 1995, Plaintiff fell from a ladder in the course of his employment for defendant in Florida, breaking his left wrist and injuring his left knee. At the time of the injury, he was a resident of Florida. On September 27, 1996, plaintiff reinjured his knee while still working for defendant in Florida. He underwent surgery on November 6, 1996 for ACL [anterior cruciate ligament] reconstruction and microfracture arthroplasty. Plaintiff returned to work for defendant with restrictions on December 2, 1996.

> He received certain benefits pursuant to Florida's worker's compensation law.

> Plaintiff continued to work for defendant until September 15, 1997. Since that time, he has worked as a project manager for Rotella, Toroyan, Clinton Group, a Florida Corporation.

> Plaintiff continues to have problems with his left knee. There is no wage loss at this time. He has, however, incurred further expenses for treatment and anticipates the need for additional surgery(ies) and future closed period(s) of disability. These claims are not covered under Florida law.

2

Plaintiff has filed an application for mediation or hearing, claiming medical and wage loss benefits under Michigan law. Defendant disputes jurisdiction. It does not dispute the existence of a work related knee injury.

The Court of Appeals summarized the proceedings before the magistrate and the Workers' Compensation Appellate Commission (WCAC):

In the proceedings below, defendants contended that pursuant to the plain language of the statute which determines the bureau's jurisdiction, MCL 418.845, to be entitled to benefits, an injured worker must be a resident of Michigan at the time of the injury. In response, plaintiff contended that pursuant to the interpretation of MCL 418.845, as set forth in *Boyd v W G Wade Shows*, 443 Mich 515; 505 NW2d 544 (1993), there is no residency requirement for an injured worker, and the bureau has jurisdiction over a petition filed by an injured worker when, as in the instant case, the contract of hire was executed in Michigan and the employer is a resident employer in Michigan. The magistrate agreed with plaintiff and concluded that the bureau had jurisdiction in this matter.

Defendant appealed the decision to the WCAC. The WCAC noted that the Supreme Court's decision in *Boyd* reaffirmed an interpretation of the jurisdictional statute originally set forth in *Roberts v IXL Glass Corp*, 259 Mich 644; 244 NW 188 (1932). The WCAC opined that *Roberts* contravened the express language of MCL 418.845, but agreed with the magistrate that *Boyd* and *Roberts* are binding. Defendants were granted leave to appeal the WCAC's decision. [1]

The Court of Appeals affirmed the WCAC decision because "pursuant to *Roberts* and *Boyd*, the WCAC properly concluded that the bureau has jurisdiction over plaintiff's petition for benefits." *Id.* at 5. We granted defendant's application for leave to appeal, directing the parties to address whether the "proposed

---

[1] Unpublished opinion per curiam, issued October 18, 2005 (Docket No. 256172), p 2.

(…continued)

3

overruling of [*Boyd*] is justified under the standard for applying stare decisis discussed in *Robinson v Detroit*, 462 Mich 439, 463-468 [613 NW2d 307] (2000)."[2]

## II. STANDARD OF REVIEW

This case requires us to interpret the language set forth in MCL 418.845. We review de novo questions of statutory construction. *People v Perkins*, 473 Mich 626, 630; 703 NW2d 448 (2005).

## III. ANALYSIS

## A. STATUTORY INTERPRETATION

MCL 418.845 is clear and unambiguous. It grants the bureau "jurisdiction over all controversies arising out of injuries suffered outside this state where the injured employee is a resident of this state at the time of injury *and* the contract of hire was made in this state." (Emphasis added.) The meaning of this provision is straightforward: where the injury occurs outside Michigan, the bureau has jurisdiction only where (1) the injured employee was a resident of Michigan at the time of the injury and (2) the contract of hire was made in Michigan. Plainly, the use of the conjunctive term "and" reflects that *both* requirements must be met before the bureau has jurisdiction over an out-of-state injury.

_____

(continued…)

[2] 474 Mich 1087 (2006).

This statute in its initial enactment in 1921 PA 173, was an amendment[3] of the Michigan Workmen's Compensation Act, 1912 (1st Ex Sess) PA 10.[4] This amendment was enacted after the decision in *Crane v Leonard Crossette & Riley,* 214 Mich 218; 183 NW 204 (1921). In *Crane*, this Court held that because participation in the workers' compensation system was elective, the requirements of the law were considered to be incorporated into the employment contract when an employer chose to participate in the system. Thus, it was irrelevant that the injury did not occur in Michigan.[5]

In 1932, this Court considered the 1921 amendment in *Roberts*, *supra*. The *Roberts* Court stated that the new statutory requirements focusing on residence at the time of the injury "would come with much, if not controlling, force if it were not in conflict with other portions of the statute." *Roberts, supra* at 647. That "other portion of the statute" was 1929 CL 8412, which this Court described as fixing "the rights and liabilities of employers and employees." *Id.* This Court said

---

[3] This statute was enacted as part III, § 19 of the act by 1921 PA 173. In the 1929 Compilation, it was numbered 1929 CL 8458. In the 1948 Compilation, it was renumbered 1948 CL 413.19. 1969 PA 317, § 898 repealed 1948 CL 413.19 and Act 317 also enacted MCL 418.845. While the statute has been renumbered, repealed, and reenacted over the years, the original language is virtually identical to the current statute, MCL 418.845.

[4] The creation of the Workmen's Compensation Act and the WDCA is discussed in *Cain v Waste Mgt, Inc (After Remand),* 472 Mich 236, 247-249; 697 NW2d 130 (2005).

that the WDCA covered "'all employees' regardless of residence or the locus of the accident." *Id.* Because of this conflict and the "radical change in the scope and effect," *id*. at 648, that the nullification of § 8412 by § 8458 would have, the Court declined to assume that the Legislature had intended such nullification when it enacted § 8458. The Court also opined that its construction was consistent with the "humane purposes" of the WDCA. This meant that § 8412 trumped § 8458, and workers' compensation coverage would be required without regard to residence or where the injury occurred, despite the language of § 8458.

In 1943 PA 245, the Legislature expressly repealed § 8412. With that action, the Legislature effectively eliminated the central rationale of the *Roberts* decision, i.e., the Court's declination to repeal by inference § 8412. The 1943 amendment thus left § 8458 as the unquestioned law. At that juncture, then, the Legislature had addressed the problem that had precluded the *Roberts* Court from enforcing § 8458, and the *Roberts* rationale for declining to enforce § 8458 no longer applied.

Indeed, the appellate courts of this state implicitly recognized this point in eight of nine cases where issues concerning § 8458 and its successor statutes arose from 1943 until the *Boyd* decision in 1992.

---

(continued…)
    [5] In *Hulswit v Escanaba Mfg Co,* 218 Mich 331; 188 NW 411 (1922), this Court reached a similar conclusion. Although this case was decided after the 1921 amendment, the act *before* the adoption of the amendment controlled that case.

In *Daniels v Trailer Transport Co,* 327 Mich 525, 527, 530; 42 NW2d 828 (1950), this Court implicitly required that the statutory prerequisites of § 8458 be met. In that case, the Court concluded that where a Michigan employer had made an employment contract in Texas, and where the employee was an Illinois resident who suffered an injury in Tennessee, jurisdiction did not exist to bring a workers' compensation action in Michigan.[6]

Without reconciling *Daniels,* however, the Court of Appeals in *Austin v W Biddle Walker Co,* 11 Mich App 311, 313, 318; 161 NW2d 150 (1968), followed what it understood to be the *Roberts* holding when it concluded that a nonresident

---

[6] In her dissent, Justice Kelly argues that that the "Court in *Daniels* relied on *Cline v Byrne Doors, Inc,* for the proposition that, "'Under the provisions in the Michigan statute on which plaintiff relies [i.e., the precursor to § 845], his right to compensation depends on whether he was employed by virtue of a contract of hire made in this State.'" *Daniels*, 327 Mich at 530, quoting *Cline v Byrne Doors, Inc*, 327 Mich 540." This is simply not true.

In *Daniels,* this Court noted the plaintiff's argument that "neither the residence of the employee, the place or State of hiring, nor the place or State of injury is controlling." *Id.* at 528. It then noted that the defendant had relied on the predecessor to the statute at issue here in arguing that the Workmen's Compensation Commission had jurisdiction over out-of-state injuries only when "the injured employee is a resident of Michigan at the time of the injury and the contract of hire was made in Michigan." *Id.* at 529-530. Further, it found that the only decision in Michigan after the effective date of 1943 PA 245, the amendment that made the act compulsory, *Cline, supra, "does not decide the issue in the case at bar."* *Id.* at 530. This Court then stated that under the facts before it, the Workmen's Compensation Commission exceeded its jurisdiction in making an award to the plaintiff. *Id.* While it is true that the Court never mentioned *Roberts,* the Legislature had by passing 1943 PA 245 destroyed the rationale and, with it, the viability of *Roberts*, so no other reading of the case can be sustained. Thus, the Legislature having effectively dispatched *Roberts,* the Court in *Daniels* simply chose to ignore *Roberts.*

7

of Michigan, hired in Michigan but injured outside Michigan, could collect workers' compensation benefits in Michigan.[7]

Returning to the *Daniels* understanding, the Court of Appeals held in *Rodwell v Pro Football, Inc,* 45 Mich App 408, 416-418; 206 NW2d 773 (1973), that where an employment contract was made in Michigan with a worker who lived in Michigan but the injury occurred out of state, the employee was eligible for Michigan workers'compensation.

Later, in *Crenshaw v Chrysler Corp,* 394 Mich 513, 515-516; 232 NW2d 166 (1975), this Court determined that the WDCA did not apply when the contract of hire with a Michigan company was executed in Ohio and the injuries occurred in Ohio.[8]

---

[7] In dissent, then-Judge Levin made the following telling observation regarding the effect of the 1943 amendment:

> In eliminating the optional nature of coverage under the act and making coverage compulsory, and in eliminating the former statutory language that an electing employer agrees "to cover and protect all employees employed in any and all of his businesses," the legislature eliminated the fundamental bases of the *Crane*, *Huslwit*, and *Roberts* holdings. [*Id*. at 326-327 (Levin, P.J., dissenting).]

[8] The same understanding of the effect of 1943 PA 245 seen in *Daniels* explains why the *Crenshaw* Court neither distinguished nor overruled *Roberts,* and also why it did not cite *Roberts* as authority. Rather, it properly relied on the statute, which by its plain language required *both* that the employee was a resident of Michigan at the time of the injury *and* that the contract of hire was made in Michigan to deny the plaintiff benefits. Justice Kelly's assertion in her dissent that some other reading is possible is, we believe, not convincing in the context of this case and the *Daniels* case.

8

Next, in *Jensen v Prudential Ins Co of America,* 118 Mich App 501, 503-504; 325 NW2d 469 (1982), the Court of Appeals, after noting that both Michigan residence and a Michigan contract of hire are required, concluded that the WDCA did not apply because the employee was not a Michigan resident and the contract was not entered into in Michigan.

In *Shaw v Grunwell-Cashero of Milwaukee,* 119 Mich App 758, 761; 327 NW2d 349 (1982), the Court of Appeals found no indication of either a Michigan contract or a Michigan resident employee. Thus, no jurisdiction existed over a Wisconsin employer.

In *Wolf v Ethyl Corp,* 124 Mich App 368, 370; 335 NW2d 42 (1983), the Court of Appeals stated that jurisdiction required both Michigan residence and a Michigan contract. While the contract of hire between the employee and the employer was made in Michigan, the employee was a resident of Connecticut at the time of the injury. Because the employee was not a Michigan resident, jurisdiction was lacking.

After noting that MCL 418.845 plainly required both conditions, the Court of Appeals, in *Bell v F J Boutell Driveaway Co,* 141 Mich App 802, 812-813; 369 NW2d 231 (1985), stated that while the case apparently involved a Michigan employer, the employee was an Ohio resident who was injured in Ohio. Thus, the bureau lacked jurisdiction.

Finally, in *Hall v Chrysler Corp,* 172 Mich App 670, 672-673; 432 NW2d 398 (1988), the Court of Appeals held that no jurisdiction existed over an out-of-

state injury because although the contract had been entered in Michigan with a Michigan company, the employee was not a Michigan resident.

At this point, two Supreme Court holdings and six Court of Appeals holdings left no doubt that § 8458 and its successors, 1948 CL 413.19 and MCL 418.845, were incontrovertibly the law[9] when this Court rejected this entire line of authority in *Boyd.*

Paying no heed to (1) the rationale of *Roberts*, (2) the unmistakable effect of the 1943 statutory amendment, and (3) the nine later cases implicitly recognizing these matters, the *Boyd* Court seized on the dicta in *Roberts* discussing the "humane purposes" of the WDCA. The *Boyd* Court asserted that MCL 418.845 could not be enforced because such a jurisdictional scheme was "not only undesirable but also unduly restrictive." *Boyd, supra* at 524. The *Boyd* majority, in the face of all contrary evidence, nonetheless opined that the Legislature had acquiesced in the *Roberts* construction. In reality, however, even assuming that legislative acquiescence is a valid judicial interpretative tool,[10] the Legislature had no need to acquiesce because the Legislature had, responding to *Roberts,* repealed the section (§ 8412) that had caused the predecessor of MCL

---

[9] The one contrary decision, *Austin, supra,* was ignored by the seven decisions that followed.

[10] See the discussion in n 11 of this opinion for an explanation of this Court's repudiation of the legislative acquiescence doctrine.

10

418.845 to be inoperable.[11]  Thus, MCL 418.845 should have been enforced, as it had been for many years.  The *Boyd* Court erred in holding to the contrary.

## B. STARE DECISIS

We conclude that overruling *Boyd* is warranted under the doctrine of stare decisis as set forth in *Robinson*.  Stare decisis is a principle of policy rather than an inexorable command, and this Court is not bound to follow precedent that is unworkable or badly reasoned.  *Robinson*, *supra* at 464.  In assessing whether to overrule a prior decision, we must consider whether the prior decision was wrongly decided, whether reliance interests would work an undue hardship, and whether changes in the law or facts no longer justify the decision.  *Id*.  "As to the

---

[11] In her dissent in *Boyd*, Justice Riley explained why she believed the majority's reliance on the legislative acquiescence doctrine was misguided:

> Considering the changes in the nature of the worker's compensation system, as well as the clarity of the statutory language, the principle of legislative acquiescence should not be used to continue a decision that lacks persuasive legal foundation. Moreover, the clarity of the conjunctive language used in MCL 418.845; MSA 17.237(845) also supports the argument that the Legislature could not change the language of the statute after *Roberts* to add a residency requirement, because the clear language already existed in the statute and nothing else needed to be added. Therefore, legislative acquiescence to the *Roberts* decision is not as clear as the majority suggests. [*Id*. at 536.]

Moreover, after *Boyd*, this Court strongly criticized the doctrine of legislative acquiescence. In *Donajkowski v Alpena Power Co*, 460 Mich 243, 261; 597 NW2d 574 (1999), we stated that "'legislative acquiescence' is a highly disfavored doctrine of statutory construction; sound principles of statutory

(…continued)

11

reliance interest, the Court must ask whether the previous decision has become so embedded, so accepted, so fundamental, to everyone's expectations that to change it would produce not just readjustments, but practical real-world dislocations." *Id*. at 466.

As discussed, the text of MCL 418.845 is so patently clear that its meaning is truly beyond any reasonable dispute. MCL 418.845 plainly grants jurisdiction to the bureau only where the injured employee was a resident of the state at the time of the injury *and* the contract of hire was made in Michigan. Because the *Boyd* Court (1) construed the statute to eliminate the residency requirement and (2) failed to recognize that the Legislature abrogated the *Roberts* decision by making the workers' compensation system mandatory in 1943, we conclude that *Boyd* was wrongly decided.

We discern no basis to conclude that *Boyd* has become so fundamental to expectations that overruling it would produce practical, real-world dislocations. Overruling *Boyd* will not affect any employees who are injured in Michigan because MCL 418.845 addresses jurisdiction *only for out-of-state injuries*. Nor will our decision affect any Michigan residents who are injured in another state. Rather, it is only residents *of other states* who are injured *outside Michigan* who would be affected by overruling *Boyd*. We discern no reason to believe that

(continued…)
construction require that Michigan courts determine the Legislature's intent from its *words*, not from its silence." (Emphasis in original.)

12

persons who neither live in Michigan nor suffer an injury in Michigan harbor expectations of receiving Michigan workers' compensation coverage, let alone that any such expectations are so embedded and fundamental that real-world dislocations will arise.

Moreover, nonresidents who are injured in other states remain free to seek workers' compensation benefits from the states in which they live or suffer injury. For example, plaintiff suffered an injury in his home state of Florida and obtained benefits under the Florida workers' compensation system. We see no indication that, as a Florida resident who was injured in Florida, plaintiff harbored an expectation of receiving benefits under the Michigan workers' compensation system *in addition to* the benefits he received from the Florida system.[12]

In considering the reliance interests at stake, we believe it is significant that the holding in *Roberts* has *not* consistently been the law in Michigan since 1932. In truth, *Roberts* was legislatively overruled by the 1943 amendments of the workers' compensation act. Indeed, the *Wolf* decision recognized the legislative abrogation and properly applied the plain language of MCL 418.845 on the ground that the *Roberts* analysis was inapplicable to our modern, mandatory

---

[12] That states like Florida might not provide workers' compensation benefits as generously as does Michigan's system does not alter our conclusion. Any difference in the level of benefits afforded simply reflects a difference in the policy choices made by each sovereign state. The citizens of Florida through their elected representatives are free to fashion their workers' compensation system as they see fit. If a Florida resident (such as plaintiff) believes that more generous

(…continued)

13

workers' compensation system.  Plaintiff has offered no evidence that chaos erupted, or that practical, real-world dislocations arose, in the period between the Legislature's abrogation of *Roberts* in 1943 and this Court's *Boyd* decision in 1993.[13]

In addition, we believe that the clarity of the statutory language suggests that overruling *Boyd* will advance rather than disrupt reliance interests.  Indeed, we made this very point in *Robinson*:

> Further, it is well to recall in discussing reliance, when dealing with an area of the law that is statutory . . . , that it is to the words of the statute itself that a citizen first looks for guidance in directing his actions.  This is the essence of the rule of law: to know in advance what the rules of society are.  Thus, if the words of the statute are clear, the actor should be able to expect, that is, rely, that they will be carried out by all in society, including the courts.  In fact, should a court confound those legitimate citizen expectations by misreading or misconstruing a statute, it is that court itself that has disrupted the reliance interest.  When that happens, a subsequent court, rather than holding to the distorted reading because of the doctrine of stare decisis, should overrule the earlier court's

---

(continued…)

benefits should be provided, the remedy lies with the Florida legislature, not with this Court.

[13] Notably, with the single exception of *Austin* in 1968, the published decisions before *Boyd* had not questioned that the Legislature's 1943 amendment superseded *Roberts*.  Of the nine cases that cited MCL 418.845 or its predecessor between 1950 and 1992, no case other than *Austin* suggested that *Roberts* continued to govern despite the 1943 amendment.  See *Daniels, supra*; *Austin*, *supra*; *Rodwell, supra*; *Crenshaw, supra*; *Jensen, supra*; *Shaw*, *supra*; *Wolf*, *supra*; *Bell*, *supra*; and *Hall*, *supra*.

Thus, overruling *Boyd* will not produce chaos or practical, real-world dislocations because we are not creating a "new" rule of law.  On the contrary, our decision simply *restores* the law to that which existed before the aberrational decision in *Boyd*.

14

misconstruction. The reason for this is that the court in distorting the statute was engaged in a form of judicial usurpation that runs counter to the bedrock principle of American constitutionalism, i.e., that the lawmaking power is reposed in the people as reflected in the work of the Legislature, and, absent a constitutional violation, the courts have no legitimacy in overruling or nullifying the people's representatives. Moreover, not only does such a compromising by a court of the citizen's ability to rely on a statute have no constitutional warrant, it can gain no higher pedigree as later courts repeat the error. [*Robinson*, *supra* at 467-468.]

The same reasoning applies here. We decline to perpetuate the distorted construction of MCL 418.845 adopted in *Boyd*. Rather, we are obligated to give effect to the statutory text to serve the fundamental expectation of our citizens that *the law means what it says*. The statute here is written in a plain, straightforward manner. Rather than give effect to this language, the *Boyd* Court nullified the clear policy choice made by the Legislature and thereby undermined the legitimate expectations of Michigan citizens that the courts will carry out the laws *as they are written*.

## IV. RESPONSE TO JUSTICE KELLY'S DISSENT

In her dissent, Justice Kelly disagrees with the legislative policy reflected in the clear language of MCL 418.845. She shares the *Boyd* majority's view that the Legislature's policy choice is "'undesirable'" and "'unduly restrictive.'" *Post* at 10 (quoting with approval from *Boyd*, *supra* at 523-524). Justice Kelly is certainly entitled to her personal opinion about what the law should be. She manifestly does *not*, however, possess the authority to rewrite the law that the

15

people's elected representatives have duly enacted. She nowhere explains the source of her authority to do this.

Under our constitution, "all political power is inherent in the people." Const 1963, art 1, § 1. The people have chosen to vest the legislative power "in a senate and a house of representatives." Const 1963, art 4, § 1. The people have not forfeited lawmaking authority to a judicial aristocracy that may simply rewrite laws with which they disagree.

Here is a law that is perfectly clear to the reader. MCL 418.845 grants jurisdiction to the bureau for out-of-state injuries where "the injured employee is a resident of this state at the time of injury *and* the contract of hire was made in this state." (Emphasis added.)

Despite this unassailably clear language, Justice Kelly asserts that the *Boyd* Court correctly identified the "intent behind § 845" as providing "jurisdiction over extraterritorial injuries *without regard to the employee's residence*, provided the employment contract was entered into in Michigan with a resident employer." *Post* at 7 (emphasis added). In other words, Justice Kelly says that the employee's residence is simply irrelevant, *despite the Legislature's express statement to the contrary*.

Presumably, Justice Kelly denies that she is arrogating to herself the power to rewrite the law. The clear statutory language quoted above naturally leads one to ask this question: Precisely what part of the word "and" is difficult to understand? Surely anyone who reads this statute can follow what it says without

16

difficulty: jurisdiction is conferred where (1) the injured employee lives in Michigan at the time of injury *and* (2) the contract of hire was made in this state. MCL 418.845. The Legislature's use of the word "and" makes it perfectly clear to any reader that both requirements must be met.

Despite all this, Justice Kelly has opined that the Legislature did not mean what it so clearly said. Justice Kelly offers no explanation for how the language of MCL 418.845 supports her interpretation. Her construction would subvert the legislative policy reflected in the clear statutory language. In accord with our constitutional duty, we have applied the statutory language to the facts of this case, consistent with earlier caselaw that had prevailed before the aberrational decision in *Boyd*.

Finally, we note that Justice Kelly repeats her criticisms about the overruling of a prior decision. See her dissent in *Rowland v Washtenaw Co Rd Comm*, 477 Mich 197; ___ NW2d ___ (2007). Justice Markman's concurrence in *Rowland* offers a thoughtful and illuminating response to those criticisms. I fully endorse the views that Justice Markman expressed in that case.

V. CONCLUSION

We hold that under the plain language of MCL 418.845, the workers' compensation bureau has jurisdiction over out-of-state injuries only where the plaintiff was a resident of Michigan at the time of the injury *and* the employment contract was made in Michigan. We must therefore overrule the decision in

17

*Boyd*.[14]   The doctrine of stare decisis as explicated in *Robinson* supports the decision to overrule *Boyd*.[15]

Maura D. Corrigan
Clifford W. Taylor
Robert P. Young, Jr.
Stephen J. Markman

---

[14] Justice Kelly incorrectly asserts that in addition to *Boyd*, we are also overruling *Roberts*. As we have explained, *Roberts* was *legislatively* abrogated by the 1943 amendments of the workers' compensation act. It is unnecessary for this Court to overrule a decision that has already been overruled by legislative action.

[15] We disagree with the assertions by Justices Weaver and Kelly that we should limit our decision to prospective application. Such prospective application "is, essentially, an exercise of the legislative power to determine what the law shall be for all *future* cases, rather than an exercise of the judicial power to determine what the existing law is and apply it to *the case at hand*." *Devillers v Auto Club Ins Ass'n*, 473 Mich 562, 587 n 57; 702 NW2d 539 (2005) (emphasis in original). This Court generally may not exercise powers properly belonging to another branch of government. Const 1963, art 3, § 2. Moreover, "prospective opinions are, in essence, advisory opinions, and our only constitutional authorization to issue advisory opinions is found in Const 1963, art 3, § 8, which does not apply in this case." *Devillers, supra* at 588 n 57. Accordingly, our holding in this case shall apply to all claimants for whom there has not been a final judgment awarding benefits as of the date of this opinion. *Id*.

STATE OF MICHIGAN

SUPREME COURT

KENNETH KARACZEWSKI,

      Plaintiff-Appellee,

v                                            No. 129825

FARBMAN STEIN & COMPANY and
NATIONWIDE MUTUAL INSURANCE COMPANY,

      Defendants-Appellants.

_____

WEAVER, J. (*concurring in part and dissenting in part*).

I concur in the majority's decision to overrule *Boyd v W G Wade Shows*, 443 Mich 515; 505 NW2d 544 (1993), but dissent from applying this decision retroactively. It should not be applied against this plaintiff and should only be applied prospectively because there has been extensive reliance for years on *Boyd* and its predecessors.

The *Boyd* Court incorrectly held, contrary to MCL 418.845, that an out-of-state worker who is injured need not have been a resident of the state of Michigan at the time of injury in order to claim workers' compensation benefits. Given that MCL 418.845 grants jurisdiction to the Workers' Compensation Agency only if the injured employee was a resident of the state at the time of the injury and the

contract for hire was made in Michigan, nonresident injured employees are not entitled to workers' compensation benefits.

I dissent from the majority's decision to apply its ruling retroactively, given that *Boyd* has been the law in this state for 14 years—a substantial period during which nonresident injured employees and related parties have relied on the elimination of the residency requirement. As this Court held in *Pohutski v City of Allen Park* 465 Mich 675, 696; 641 NW2d 219 (2002), there are

> three factors to be weighed in determining when a decision should not have retroactive application. Those factors are: (1) the purpose to be served by the new rule, (2) the extent of reliance on the old rule, and (3) the effect of retroactivity on the administration of justice. *People v Hampton*, 384 Mich 669, 674; 187 NW2d 404 (1971). In the civil context, a plurality of this Court noted that *Chevron Oil v Huson*, 404 US 97, 106-107; 92 S Ct 349; 30 L Ed 2d 296 (1971), recognized an additional threshold question whether the decision clearly established a new principle of law. *Riley v Northland Geriatric Center (After Remand),* 431 Mich 632, 645-646; 433 NW2d 787 (1988) (Griffin, J.).

Weighing the three factors leads to the conclusion, as in *Pohutski*, that prospective application is appropriate here. First, the purpose of the new rule is to correct an error in the interpretation of MCL 418.845. Prospective application would further this purpose. Second, there has been extensive reliance for 14 years on *Boyd*'s interpretation of MCL 418.845. In addition to reliance by the courts, insurance decisions have undoubtedly been predicated on this Court's longstanding interpretation of MCL 418.845 under *Boyd*. Nonresident injured employees, like plaintiff, who initially entered into contracts for hire in Michigan,

2

but later agreed to work outside Michigan, have relied on the ability to obtain workers' compensation benefits based on their employment relationship with Michigan employers. Prospective application acknowledges that reliance and assures the fair resolution of those pending workers' compensation cases. Finally, prospective application minimizes the effect of this decision on the administration of justice because retroactive application would require in many cases new proceedings before the agency to reverse any benefit awards made pursuant to *Boyd.*

Elizabeth A. Weaver

3

STATE OF MICHIGAN

SUPREME COURT

KENNETH KARACZEWSKI,

      Plaintiff-Appellee,

v                                                                    No. 129825

FARBMAN STEIN & COMPANY and
NATIONWIDE MUTUAL INSURANCE
COMPANY,

      Defendants-Appellants.

_____

KELLY, J. (*dissenting*).

    Today the majority adds to its exponentially growing list of overturned precedents.[1]  The well-reasoned decision of *Roberts v I X L Glass Corp*[2] has been the law of this state for the past 74 years.  In 1993, this Court revisited the reasoning of *Roberts* in *Boyd v W G Wade Shows*,[3] affirmed the decision, and rejected many of the same arguments that the majority makes today.  Nothing has changed since this Court's decision in *Boyd* other than the makeup of the Court.  At no time has the Legislature taken steps to reenact or amend any precursor to, or

---

[1] For a more detailed review of the majority's proclivity at overturning precedent, see my partial dissent in *Rowland v Washtenaw Co Rd Comm*, 477 Mich 197; ___ NW2d ___ (2007) (Kelly, J., concurring in part and dissenting in part).

[2] 259 Mich 644; 244 NW 188 (1932).

[3] 443 Mich 515; 505 NW2d 544 (1993).

the current version of, MCL 418.845 in response to this Court's decisions in

*Roberts* or *Boyd*. Because I believe that in those cases this Court properly

effectuated the Legislature's intent when enacting § 845, I must disagree with the

decision to overrule *Boyd*.

## I. MCL 418.845, *ROBERTS,* AND *BOYD*

The sole question here is whether appellants' proposed overruling of *Boyd*

is justified under the standard for departing from the rule of stare decisis discussed

in *Robinson v Detroit*, 462 Mich 439; 613 NW2d 307 (2000).

The statute at the heart of this question is MCL 418.845, which provides:

> The bureau shall have jurisdiction over all controversies
> arising out of injuries suffered outside this state where the injured
> employee is a resident of this state at the time of injury and the
> contract of hire was made in this state. Such employee or his
> dependents shall be entitled to the compensation and other benefits
> provided by this act.

The landmark case interpreting the precursor to § 845[4] is *Roberts*. The

question presented in *Roberts* was:

---

[4] The precursor to § 845 is found at part III, § 19 of 1921 PA 173. 1929 CL 8458 provided:

> The industrial accident board shall have jurisdiction over all
> controversies arising out of injuries suffered without the territorial
> limits of this state, in those cases where the injured employee is a
> resident of this state at the time of the injury, and the contract of hire
> was made in this state, and any such employee or his dependents
> shall be entitled to the compensation or death benefits provided by
> this act.

2

> [W]hether an employee whose contract for employment is entered into in Michigan with a resident employer who is under the workmen's compensation act . . . for services to be rendered wholly outside of the State of Michigan is within the terms of the act so that, if otherwise entitled thereto, he may be awarded compensation notwithstanding the accident occurred in another State and that the employee was at no time a resident of Michigan. [*Roberts v I X L Glass Corp,* 259 Mich 644, 644-645; 244 NW2d 188 (1932).]

Like the appellants here, the appellants in *Roberts* contended that the residency requirement of the precursor to § 845 constituted a limitation on the jurisdiction of the Industrial Accident Board. *Id.* at 647. However, the *Roberts* Court concluded that the Legislature could not have intended such a result. Among other things, the residency requirement was embodied in the procedural part of the act, not in the part that defines and fixes the rights and liabilities of employers and employees. *Id.*

Additionally, the *Roberts* Court pointed out that part III, § 19 conflicted with § 6 of the act.[5] The Court stated that § 6 allowed that the act protected "all employees" regardless of the residence of the employee or the locus of the accident. *Roberts*, 259 Mich at 647. Section 7 defined "employee" as "[e]very

---

[5] Specifically, § 6, 1929 CL 8412, provided:

> [S]uch employer accepts the provisions of this act for all his businesses, and to cover and protect all employees employed in any and all of his businesses, including all businesses in which he may engage, and all employees he may employ while he remains under this act . . . .

3

person in the service of another under any contract of hire . . . ." 1929 CL 8413. This section was in full harmony with § 6. *Roberts*, 259 Mich at 648.

Moreover, the *Roberts* Court reasoned that, as a matter of legislative policy, it would be "inconsistent . . . to deny compensation to an injured employee on the ground that he was a nonresident, but in case of fatal injury to award compensation to his dependents regardless of residence or citizenship." *Id*. Therefore, it concluded, the "reasonable construction and the one necessary to carry out the legislative intent appearing from the whole act is that it covers nonresident as well as resident employees in those cases wherein the contract of employment is entered into in this State with a resident employer." *Id.* at 648-649. The *Roberts* Court added that its construction was in accord with the "humane purposes" of the act. *Id.* at 649.

Nearly 61 years later, in *Boyd*, this Court revisited the reasoning and holding of *Roberts*. In that case, the employee was an Illinois resident who entered into a contract of employment in Michigan and was injured on the job in Indiana. *Boyd v W G Wade Shows*, 443 Mich 515, 516; 505 NW2d 544 (1993). The Court determined that the Bureau of Workers' Disability Compensation had jurisdiction to award benefits under the Worker's Disability Compensation Act (WDCA). MCL 418.101 *et seq.* It noted that *Roberts* was the landmark case that interpreted an earlier version of § 845 and set forth the rule of law regarding extraterritoriality. *Id.* at 517-518.

4

The *Boyd* Court noted that, although the Court of Appeals had reaffirmed the holding and reasoning of *Roberts* in *Austin v W Biddle Walker Co*,[6] the Court of Appeals had begun to interpret § 845 in contravention of *Roberts*.  *Id.* at 521-522, citing *Wolf v Ethyl Corp*, 124 Mich App 368; 335 NW2d 42 (1983), and *Hall v Chrysler Corp*, 172 Mich App 670; 432 NW2d 398 (1988).  *Boyd* expressly rejected the Court of Appeals reasoning in those cases that, because *Roberts* had been decided at a time when the act was elective, *Roberts* was no longer valid.  *Boyd,* 443 Mich at 522-523.

Specifically, *Boyd* noted that "[t]he fact that the act became compulsory subsequent to *Roberts* is irrelevant; the requirements of § 845 have remained intact."  *Id.* at 523.  Moreover, the Court wrote, "it is the Supreme Court's obligation to overrule or modify case law if it becomes obsolete, and until this Court takes such action, the Court of Appeals and all lower courts are bound by that authority. . . .  Because this Court has never overruled *Roberts*, it remains valid precedent."  *Id.* at 523.

*Boyd* also noted that, if *Roberts* were overruled, a "significant gap" in coverage would exist in Michigan's workers' compensation scheme.  *Id.* Specifically, it opined, all Michigan employees who suffer an out-of-state injury in the course of their employment and who reside in neighboring states would not be entitled to benefits.  *Id.* at 523-524.  This Court determined that *Roberts* remained

---

[6] 11 Mich App 311; 161 NW2d 150 (1968).

"an effective means of retaining a fair and consistent scheme for extraterritorial jurisdiction." *Id.* at 524.

Moreover, *Boyd* observed that, by that time, the Legislature had acquiesced for 60 years in extraterritorial jurisdiction as expressed in *Roberts*. *Id.* at 525. Following in the Legislature's footsteps, *Boyd* declined to disturb the *Roberts* interpretation. Accordingly, the *Boyd* Court concluded that "the Bureau of Workers' Disability Compensation shall have jurisdiction over extraterritorial injuries without regard to the employee's residence, provided the contract of employment was entered into in this state with a resident employer." *Id.* at 526.

## II. THE *ROBINSON* FACTORS

In its decision today, the Court overrules *Boyd*. The same four justices who signed the majority opinion signed *Robinson* in 2000. In it, they set forth the factors to consider in overruling a decision while giving deference to the doctrine of stare decisis. *Robinson, supra.* They indicated that a court must first consider whether the earlier decision was wrongly decided. *Robinson, supra* at 464. It must also consider whether the decision "defies 'practical workability,' whether reliance interests would work an undue hardship, and whether changes in the law or facts no longer justify the questioned decision." *Id.*

With regard to the first *Robinson* factor, I believe that *Boyd* was properly decided. The primary goal of statutory interpretation is to give effect to the Legislature's intent. *In re MCI Telecom Complaint*, 460 Mich 396, 411; 596

NW2d 164 (1999). In both *Roberts* and *Boyd,* this Court identified the intent behind § 845: to provide the workers' compensation bureau with jurisdiction over extraterritorial injuries without regard to the employee's residence, provided the employment contract was entered into in Michigan with a resident employer.

The Legislature has never indicated its disapproval of *Roberts* or *Boyd*.[7] It has revised the WDCA numerous times since 1932 when *Roberts* was decided, but it has taken no action that would indicate its disapproval of *Roberts*. In 1993, this Court reaffirmed the reasoning and holding of *Roberts* in *Boyd*. However, the Legislature still has not amended the statute, stated another purpose behind it, or taken any action indicating disapproval of the *Roberts* and *Boyd* interpretation of § 845. This lack of legislative correction strongly indicates that *Roberts* and *Boyd* properly determined and effectuated the intent behind MCL 418.845. Where this Court has properly interpreted the intent of the Legislature, the primary goal of statutory interpretation has been achieved. *In re MCI*, 460 Mich 411.

Justice Corrigan's opinion propounds that the text of MCL 418.845 "is so patently clear that its meaning is truly beyond any reasonable dispute." *Ante* at 12. However, the mere fact that the majority does not agree with the *Roberts* and *Boyd* interpretation of § 845 does not make the statute "beyond any reasonable dispute."

---

[7] The Legislature is presumed to be aware of judicial interpretations of existing law. *Ford Motor Co v Woodhaven*, 475 Mich 425, 439; 716 NW2d 247 (2006).

7

As I noted in my opinion in *Rowland*, "[i]t is amazing how often the members of this majority have declared themselves more capable of understanding the law and reaching the 'right' result than any justice who sat before." *Rowland*, 477 Mich at 256 (Kelly, J., concurring in part and dissenting in part). Moreover, the majority's suggestion that the Michigan Legislature could not have drafted language indicating its disapproval of the *Roberts* and *Boyd* interpretation of § 845 underestimates the ability of our legislators.[8]

In its opinion, the majority again questions the use of legislative acquiescence as a valid judicial tool for statutory interpretation. However, as I noted in *Rowland*, legislative acquiescence is one of the many judicial tools a court properly uses when attempting to effectuate the intent of the Legislature. *Rowland*, 477 Mich at 261 (Kelly, J., concurring in part and dissenting in part). In fact, the use of legislative acquiesce as a recognized judicial tool can be traced to the late nineteenth century. See *id*. at 260, referring to *Douglass v Pike Co*, 101 US (11 Otto) 677, 687; 11 Otto 677; 25 L Ed 968 (1880). Significantly, the United States Supreme Court has recently reaffirmed its use:

> [T]he claim to adhere to case law is generally powerful once a decision has settled statutory meaning, see *Patterson* v. *McLean*

---

[8] The majority suggests that I am rewriting the statute to reflect my personal opinions of what the law should be. That is not so. I view it my responsibility as a justice to interpret the law. For the reasons I have stated, I believe that the learned jurists who preceded me on the bench correctly interpreted the intent of the Legislature in writing this statute. Notably, the Legislature has acquiesced in their interpretation of it.

*Credit Union*, 491 U.S. 164, 172-173, 109 S. Ct. 2363, 105 L. Ed. 2d 132 (1989) ("Considerations of *stare decisis* have special force in the area of statutory interpretation, for here, unlike in the context of constitutional interpretation, the legislative power is implicated, and Congress remains free to alter what we have done"). In this instance, time has enhanced even the usual precedential force[.] [*Shepard v United States*, 544 US 13, 23; 125 S Ct 1254; 161 L Ed 2d 205 (2005).]

Also, Michigan's history reveals a consistent and long use of this tool by the courts. See *Brown v Manistee Co Rd Comm*, 452 Mich 354, 367-368; 550 NW2d 215 (1996), *Gordon Sel-Way, Inc v Spence Bros, Inc*, 438 Mich 488, 505; 475 NW2d 704 (1991), *Craig v Larson*, 432 Mich 346, 353; 439 NW2d 899 (1989), *Wikman v City of Novi*, 413 Mich 617, 638; 322 NW2d 103 (1982), *Smith v Detroit*, 388 Mich 637, 650; 202 NW2d 300 (1972), *Magreta v Ambassador Steel Co*, 380 Mich 513, 519-520; 158 NW2d 473 (1967), *In re Clayton Estate*, 343 Mich 101, 106-107; 72 NW2d 1 (1955), and *Twork v Munsing Paper Co*, 275 Mich 174, 178; 266 NW 311 (1936).

Accordingly, legislative acquiescence has been and continues to remain a valid tool with which the judiciary can interpret legislative intent. Although the majority of my colleagues has banished legislative acquiescence from its repertoire, I and others on the Court quite appropriately may continue to use it as a judicial tool.

I also believe that *Boyd* was properly decided for the reason that the public policy concerns that existed when *Boyd* was decided remain today. As *Boyd* stated:

9

If the allegedly "out-dated" *Roberts* decision is overruled by this Court, then a significant gap in coverage will exist in this state's compensation scheme. Specifically, all Michigan employees who suffer an out-of-state injury in the course of their employment and who reside in neighboring states will not be subject to the bureau's jurisdiction. We believe that such a jurisdictional scheme is not only undesirable but also unduly restrictive. [*Boyd*, 443 Mich at 523-524.]

This concern over the gap in coverage correlates with the general principle that the WDCA, as a remedial statute, is to be liberally construed to grant, rather than deny, benefits. *DiBenedetto v West Shore Hosp*, 461 Mich 394, 402; 605 NW2d 300 (2000).

The majority contends that *Boyd* was not properly decided. It reasons that *Boyd* relied on *Roberts* and, when the Legislature repealed 1929 CL 8412[9] in 1943, the foundation of *Roberts* crumbled.[10] This is untrue. As noted above, numerous other factors were considered by the *Roberts* Court in reaching its decision. Specifically, *Roberts* noted that the residency requirement was in the

---

[9] As noted above in footnote 5, § 8412 referred to § 6 of the act as it existed when *Roberts* was decided. Specifically, § 8412 provided:

[S]uch employer accepts the provisions of this act for all his businesses, and to cover and protect all employees employed in any and all of his businesses, including all businesses in which he may engage, and all employees he may employ while he remains under this act . . . .

[10] I would also highlight that, even though the Legislature repealed § 8412 in 1943, it did not repeal or in any way substantively alter § 845.

10

procedural part of the act, not in the part that defines and fixes the rights and liabilities of employers and employees. *Roberts*, 259 Mich at 647.

Moreover, *Roberts* held that, as a matter of legislative policy, it would be "inconsistent . . . to deny compensation to an injured employee on the ground that he was a nonresident, but in case of fatal injury to award compensation to his dependents regardless of residence or citizenship." *Id.* at 648. *Roberts* also noted that its construction was in accord with the "humane purposes" of the act. *Id.* at 649. Therefore, contrary to the majority's claim, the reasoning in *Roberts* did not rely solely on the existence of 1929 CL 8412.

The majority also contends that *Boyd* was not properly decided because *Boyd* relied on *Roberts* after the Legislature made the workers' compensation system mandatory. This argument was asserted before the *Boyd* Court and rejected. Specifically, *Boyd* noted that "[t]he fact that the act became compulsory subsequent to *Roberts* is irrelevant; the requirements of § 845 have remained intact." *Boyd,* 443 Mich at 523.

For the reasons stated above, I believe that *Boyd* was properly decided, hence the first *Robinson* factor is not satisfied. *Robinson,* 462 Mich at 464. The Legislature has acquiesced in the *Roberts* and *Boyd* interpretation of § 845. This strongly indicates that this Court's interpretation of this statute properly identified the Legislature's intent, and *Boyd* was correctly decided.

11

The remaining *Robinson* factors also support affirming *Boyd*. Those factors are: (1) whether the decision defies "practical workability," (2) whether reliance interests would work an undue hardship if the authority were overturned, and (3) whether changes in the law or facts make the decision no longer justified. *Robinson*, 462 Mich at 464.

*Roberts* and *Boyd* do not defy practical workability. Rather, the interpretation of § 845 underlying both these cases has been an integral part of Michigan's workers' compensation scheme for 74 years.[11] As the Workers' Compensation Appellate Commission indicated in the instant case, regardless of whether the lower tribunals agreed with *Roberts* and *Boyd*, they have applied *Roberts* or *Boyd* for decades. Accordingly, there is no practical workability problem.

The next concern is whether reliance interests would work an undue hardship if the authority were overturned. *Robinson,* 462 Mich at 464. "[T]he Court must ask whether the previous decision has become so embedded, so

---

[11] Justice Brickley stated in his concurrence in *Boyd* that even though he believed *Roberts* was incorrectly decided, he concurred with the majority in *Boyd* because he agreed with its determination that, "after fifty years of legislative acquiescence, the *Roberts* decision has become ensconced as part of the overall workers' compensation scheme." *Boyd*, 443 Mich at 527 (Brickley, J., concurring). Justice Brickley's concern is even more applicable to the instant case because an additional 13 years have passed since *Boyd* was decided. During that period, the *Roberts* decision has become even more embedded as part of the overall workers' compensation scheme.

12

accepted, so fundamental, to everyone's expectations that to change it would produce not just readjustments, but practical real-world dislocations." *Id*. at 466.

Overturning *Roberts* and *Boyd* would work an undue hardship. As has been repeatedly noted, the underlying rationale of *Roberts*, and therefore *Boyd*, has been in place for over seven decades. It is difficult to imagine a plausible argument that this rationale has not become a fundamental part of the workers' compensation regime. Indeed, the rationale underlying *Roberts* and *Boyd* predates the jurists, litigators, and claimants involved in this case.

For decades, employers have been paying benefits to injured employees in reliance on *Roberts* and *Boyd*. Will those employees be required to return their benefits? At oral argument, appellate counsel for appellants suggested that his clients would forgo any attempts to retrieve previously paid benefits. While the appellants here might not seek a refund, there remain many other employers or insurance companies that may not view past benefits paid as "water under the bridge." Accordingly, it seems incontestable that reliance interests would work an undue hardship if *Roberts* and *Boyd* are overturned.

The final *Robinson* factor is whether changes in the law or facts make the decision no longer justified. *Robinson*, 462 Mich at 464. The majority attempts to argue that the state of the law regarding the jurisdiction of the Bureau of Workers' Disability Compensation over extraterritorial injuries has been in a state of flux. However, that argument crumbles under close analysis.

13

Only two decisions of this Court have thoroughly explored the issues presented in this case: *Roberts* and *Boyd*. Because neither had ever before been expressly overruled, both remained good law until now.

The majority relies on *Daniels v Trailer Transport Co*[12] for the proposition that this Court has previously required that, before the workers' compensation tribunal can exercise jurisdiction, both subsections of § 845 must be met. The plaintiff in *Daniels* was an Illinois resident hired by a Michigan employer under a Texas contract of hire. *Daniels v Trailer Transport Co*, 327 Mich 525, 527; 42 NW2d 828 (1950). He was injured on the job in Tennessee and attempted to obtain benefits under the Michigan workers' compensation regime. *Id.* Like the appellants in the instant case, the employer contended that the workers' compensation commission's jurisdiction extended only to extraterritorial injuries where the employee resided in Michigan and contracted for employment here. *Id.* at 529-530.

This Court in *Daniels* relied on *Cline v Byrne Doors, Inc*,[13] for the proposition that, "'[u]nder the provisions in the Michigan statute on which plaintiff relies [i.e., the precursor to § 845], his right to compensation depends on whether he was employed by virtue of a contract of hire made in this State.'" *Daniels*, 327 Mich at 530, quoting *Cline*, 327 Mich at 540. Applying the *Cline*

---

[12] 327 Mich 525; 42 NW2d 828 (1950).

rationale to the facts in *Daniels*, this Court concluded that the facts of the case did not bring the plaintiff within the provisions of the act.[14]

Noticeably absent from the reasoning in *Daniels* was any attempt to distinguish or overrule *Roberts*. Additionally, *Daniels* did not specify that the commission had jurisdiction only over extraterritorial injuries of a Michigan resident whose contract of hire was made in Michigan. Rather, the *Daniels* Court simply noted that *Cline* required the contract of hire be made in this state. *Daniels,* 327 Mich at 530. This proposition is consistent with the holding in *Roberts.*

Moreover, in *Austin v W Biddle Walker Co*,[15] the Court of Appeals opined that the reasoning in *Daniels* was consistent with that of *Roberts* The sole issue before the Court of Appeals in *Austin* was whether the Michigan Workers' Compensation Appeal Board had jurisdiction over a nonresident employee injured

---

(continued…)

[13] 324 Mich 540; 37 NW2d 630 (1949).

[14] The *Daniels* Court did not explicitly overrule, or even mention, *Roberts*. Although the facts presented in *Cline* were not the same as those presented in *Daniels*, the Court in *Daniels* did rely on *Cline* for the proposition quoted above. *Daniels,* 327 Mich at 530. After quoting *Cline*, the *Daniels* Court noted that the contract of hire in that case was made in Texas, whereas the contract of hire in *Cline* was made in Michigan. *Daniels*, 327 Mich at 530. Where the contract of hire was not made in Michigan, the *Daniels* Court concluded that the workers' compensation commission exceeded its jurisdiction in making the award. *Id*. This holding is consistent with *Roberts* and, I believe, reasonable notwithstanding the majority's contrary view.

[15] 11 Mich App 311; 161 NW2d 150 (1968).

(…continued)

15

while working out of state under a Michigan employment contract. *Austin v W Biddle Walker Co,* 11 Mich App 311, 313; 161 NW2d 150 (1968). Employing the reasoning above, the Court of Appeals in *Austin* concluded that *Daniels* and *Cline* were consistent with *Roberts.* *Id.* at 318. It further concluded that *Austin* was governed by *Roberts.* Therefore, it opined, the Workers' Compensation Appeal Board properly exercised jurisdiction, and, to be entitled to benefits, the nonresident claimant had only to be injured while under a Michigan contract of hire. *Id.* at 313, 318.

The majority also points to another decision by this Court, *Crenshaw v Chrysler Corp,*[16] to support its proposition that the law after *Roberts* has been in a state of flux. However, that argument also withers under close analysis.

In *Crenshaw*, the plaintiff employee was injured while working out-of-state under an Ohio contract of hire. *Crenshaw v Chrysler Corp*, 394 Mich 513, 515; 232 NW2d 166 (1975). This Court quoted § 845 and italicized the phrase "contract of hire was made in this state." *Id.* at 516 n 1. In finding that the out-of-state injuries were not compensable in Michigan, this Court noted that the plaintiff had entered into his contract of hire in Ohio. *Id.* at 516.

(continued…)

[16] 394 Mich 513; 232 NW2d 166 (1975).

16

Again, noticeably absent from the reasoning in *Crenshaw* was any attempt to distinguish or overrule *Roberts*. This Court in *Crenshaw* did not specify that the commission had jurisdiction over extraterritorial injuries only if the employee was hired in Michigan and was residing here when injured. Rather, this Court simply implied that, in order to be eligible for benefits, the plaintiff had to have entered into a Michigan contract of hire. This proposition is consistent with *Roberts*.[17]

Therefore, the majority's claim that two decisions of this Court have called the reasoning of *Roberts* into question is inaccurate. The two decisions it cites neither explicitly nor implicitly overruled *Roberts*. Rather, both *Daniels* and *Crenshaw* were consistent with *Roberts*. Accordingly, *Roberts* was still good law at the time this Court decided *Boyd*.

The majority also cites numerous Court of Appeals decisions that have questioned the *Roberts* decision. However, all of them predate *Boyd*. As this Court noted in *Boyd*:

> [I]t is the Supreme Court's obligation to overrule or modify case law if it becomes obsolete, and until this Court takes such action, the Court of Appeals and all lower courts are bound by that

[17] The majority disagrees with my interpretation of *Crenshaw*. However, it is undisputed that the Court in *Crenshaw* did not explicitly overrule, or even mention, *Roberts*. Rather, the Court noted that the contract of hire in that case was made out of state. It then emphasized, using italics, that the statute required that the contract of hire be made in Michigan in order for the bureau to have jurisdiction. *Crenshaw,* 394 Mich at 515-516 and 516 n 1. Such a holding is consistent with *Roberts*.

17

authority. While the Court of Appeals may properly express its belief that a decision of this Court was wrongly decided or is no longer viable, that conclusion does not excuse the Court of Appeals from applying the decision to the case before it. Because this Court has never overruled *Roberts*, it remains valid precedent. The rule of law regarding extraterritorial jurisdiction as expressed in *Roberts* should have been applied by the bureau in the present case. [*Boyd*, 443 Mich at 523 (internal citations omitted).]

Accordingly, contrary to the majority's argument, *Roberts* and *Boyd* have continued to remain good law until today. In conclusion, none of the *Robinson* factors supports overruling *Boyd*.

## III. RETROACTIVITY

I agree with Justice Weaver that the majority's decision warrants prospective application. Generally, judicial decisions are given full retroactive effect. *Pohutski v City of Allen Park*, 465 Mich 675, 695; 641 NW2d 219 (2002). But there are well-established exceptions to this rule. The Court should consider the equities involved and, if injustice would result from full retroactivity, should adopt a more flexible approach. *Lindsey v Harper Hosp*, 455 Mich 56, 68; 564 NW2d 861 (1997). Prospective application is appropriate where the holding overrules settled precedent. *Id.* As was noted *Pohutski*:

> This Court adopted from *Linkletter v Walker*, 381 US 618; 85 S Ct 1731[;] 14 L Ed 2d 601 (1965), three factors to be weighed in determining when a decision should not have retroactive application. Those factors are: (1) the purpose to be served by the new rule, (2) the extent of reliance on the old rule, and (3) the effect of retroactivity on the administration of justice. In the civil context, a plurality of this Court noted that *Chevron Oil v Huson*, 404 US 97, 106-107; 92 S Ct 349; 30 L Ed 2d 296 (1971), recognized an additional threshold question whether the decision clearly

18

established a new principle of law. [*Pohutski*, 465 Mich at 696 (citation omitted).]

It is apparent that the majority in this case states a new rule of law. In fact, it overturns decades of precedent. And, when a Court overturns precedent interpreting a statute, the decision is equivalent to, and is treated as, a new rule of law. *Id.* at 696-697.

The first *Pohutski* factor is the purpose to be served by the new rule. The majority's purpose in its opinion here is to correct a statutory interpretation that it has found to be incorrect. Both prospective and retroactive application further such a purpose. *Id.* at 697.

The second factor is the extent of reliance on the old rule. *Id.* at 696. There are significant reliance concerns implicated by the overturning of *Roberts* and *Boyd*. The underlying rationale of these cases has been in place for seven decades. Attorneys, employers, insurance carriers, and various employees have relied on the holdings of *Roberts* and *Boyd*. Prospective application acknowledges the extensive reliance placed on the rationale of *Roberts* and *Boyd*. Retroactive application does not.

The final *Pohutski* factor is the effect of retroactivity on the administration of justice. *Id.* Retroactive application of this case could have serious adverse implications for the administration of justice. Many employees have received benefits in accord with *Boyd*. Under the majority's holding, the employees could

19

be called on to give up or repay those benefits. Prospective application would eliminate this harsh result and thus promote the administration of justice.

Accordingly, application of the *Pohutski* factors strongly indicates a need for prospective application of this decision.

## IV. CONCLUSION

The majority continues at its unparalleled rate of overturning this Court's precedent. For the reasons stated above, none of the *Robinson* factors supports overruling *Boyd*. It was properly decided. The Legislature has taken no action to show disagreement with the interpretation of MCL 418.845 in *Roberts* or *Boyd*. The public policy concerns at issue when *Boyd* was decided remain unchanged to this day.

*Boyd* does not defy "practical workability." Indeed, various workers' compensation tribunals have been effectively applying *Boyd* since 1993 and *Roberts* since 1932. Reliance interests will work an undue hardship once *Boyd* is overturned because its underlying principles have been enmeshed in Michigan's workers' compensation regime for decades. Benefits paid to numerous injured employees in reliance on *Roberts* and *Boyd* lie in jeopardy. Finally, no changes exist in the law or facts to justify questioning the *Boyd* decision. Contrary to the majority's argument, the holdings of *Roberts* and *Boyd* remained good law until today.

Accordingly, for the reasons I stated earlier, giving appropriate deference to the 74-year precedent established in *Roberts* and upheld by *Boyd*, I would affirm the judgment of the Court of Appeals. Given that the majority has overruled *Boyd* and *Roberts,* the *Pohutski* factors should be applied to determine whether the new decision should be given retroactive application. Once those factors are weighed, it is obvious that the decision in this case should be applied prospectively.

Marilyn Kelly
Michael F. Cavanagh

21